## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 29 2015, 9:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Samuel L. Hobbs, Jr.
New Castle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Samuel L. Hobbs, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 29, 2015

Court of Appeals Cause No.
18A05-1408-CR-394

Appeal from the Delaware Circuit Court, The Honorable Marianne L. Vorhees, Judge
Cause No. 18C01-1007-FA-6

**Najam, Judge.**

## Statement of the Case

[1] Samuel L. Hobbs, Jr. appeals the trial court's denial of his petition to modify sentence. Hobbs raises two issues for our review, which we consolidate and

restate as whether the trial court abused its discretion when it denied his petition. We affirm.

## Facts and Procedural History

[2] The facts underlying Hobbs' convictions were stated by this court in his direct appeal:

> In the fall of 2003, Hobbs met L.M. at work. Early in 2004, they became romantically involved. Throughout their relationship Hobbs lived in various locations and, while he never lived with L.M., he occasionally spent the night with her. In the fall of 2004, as their relationship began to subside, Hobbs insisted he needed L.M.'s help in overcoming his drug addiction. Hobbs did not see L.M. between February of 2005 and June 19, 2005, although they wrote each other and spoke on the phone.
>
> On June 19, 2005, Hobbs was released from prison. Hobbs and L.M. met at St. Francis church for the 9:00 a.m. service, after which L.M. drove Hobbs to cash a money order, then dropped him off at a Wendy's restaurant. From there, L.M. went to visit her parents. She did not see or speak with Hobbs the rest of the day. Upon returning home, L.M. had several messages from Hobbs on her answering machine that "started out nice and seemed to end up very violent, hateful." At 11:18 p.m., L.M. was awakened when she felt Hobbs crawling into bed with her. She told him to leave, but he refused and became physical, throwing her on her back, and eventually removing her pants and underwear, as well as his own clothing. Hobbs proceeded to put his finger in her vagina, followed by his penis. He later performed oral sex on her and penetrated her anally. L.M. fought Hobbs screaming and yelling for her neighbor, Lori Ford (Ford), all the while telling Hobbs to "stop, get off, leave me alone," and that it "hurt." Hobbs responded by telling her to shut up and covering her mouth with his hands. L.M. attempted to call 911, but Hobbs took the telephone from her and threw it. L.M. found the telephone under her bed the next day.

While L.M.'s encounter with Hobbs was happening, Ford was walking her dog underneath L.M.'s open bedroom window. Ford heard loud, piercing screams coming from the window. Ford called 911 to report that her neighbor was being attacked, and stayed on the line with the 911 operator until the police arrived.

Officers Doug Narramore and Michael Shaffer (the Officers) responded to Ford's 911 call. The Officers heard cries for help coming from L.M.'s window. The Officers also saw a man later identified as Hobbs in the window and heard him advise L.M. to tell them to leave. L.M. refused and proceeded outside as instructed by the Officers. The Officers entered L.M.'s home, located Hobbs, handcuffed him, and removed him from the home. Officer Rodney Frasier photographed the scene and obtained hair and blood samples from Hobbs. L.M. was taken to Ball Memorial Hospital where she underwent a physical examination, including whether there was evidence of a sexual trauma.

That same evening between 11:00 and 11:30 p.m., Clark Tudor (Clark) was at home watching a basketball game when one of the two phone lines in his house rang; his wife Faye was asleep. He said hello, twice, but there was no response, so he just listened. He heard an unfamiliar female voice crying, "You're hurting me," and an equally 'unfamiliar male voice saying, "Shut up. Shut up. Be quiet." Then, he heard the woman scream, "unlike any other scream [he]'d ever heard in [his] life. It was a blood curdling scream."

Clark awoke his wife. He put the call on speakerphone in the kitchen where they both listened in on the call. Faye heard someone calling for Rory, or Lori as well as multiple screams, after which she went into the bedroom and called 911 on their other telephone line. She believed someone was "getting raped because it was really screaming." The phone call was traced by the 911 supervisor to L.M.'s house.

On June 22, 2005, the State filed an Information charging Hobbs with Count I, burglary resulting in bodily injury, a Class A felony, Count II, rape, a Class B felony, and Count III, criminal deviate conduct, a Class B felony. On January 10 through 12, 2006, a jury trial was held resulting in the following convictions: Count I, residential entry, a Class D felony; Count II, battery with bodily injury, a Class A

misdemeanor; and Count III, criminal deviate conduct, a Class B felony. On February 7, 2006, Hobbs was sentenced to three years on Count I, residential entry, one year on Count II, battery with bodily injury, and twenty years on Count III, criminal deviate conduct, with Count I to run consecutive to Count III and Count II to run concurrent to Count III for an aggregate sentence of 23 years.

*Hobbs v. State*, No. 18A04-0602-CR-95, 2007 WL 166209 at *1-*2 (Ind. Ct. App. Jan. 24, 2007) (citations omitted). Hobbs' trial counsel argued that L.M. had consented to the sexual activity. Accordingly, he sought and received an instruction for battery, as a Class A misdemeanor, as a lesser included offense of rape, as a Class B felony. The jury found Hobbs guilty of the battery and acquitted him of rape.

[3] In his direct appeal, among other things Hobbs challenged the appropriateness of his sentence under Indiana Appellate Rule 7(B). We affirmed the trial court's judgment on this and all other issues. On July 19, 2007, Hobbs filed his petition for post-conviction relief, which he later amended in July of 2010. The post-conviction court denied his petition on December 28, 2010. We affirmed the post-conviction court's judgment on appeal.

[4] On July 23, 2014, Hobbs filed his petition for modification of sentence pursuant to Indiana Code Section 35-38-1-17(c) (2014). The State objected, and the trial court denied Hobbs' petition on August 11. This appeal ensued.

## Discussion and Decision

[5] Hobbs appeals the trial court's denial of his petition to modify his sentence pursuant to Indiana Code Section 35-38-1-17(c) (2014). We review a trial

court's decision to modify a sentence only for abuse of discretion. *Gardiner v. State*, 928 N.E.2d 194, 196 (Ind. 2010). An abuse of discretion occurs if the court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Myers v. State*, 718 N.E.2d 783, 789 (Ind. Ct. App. 1999).

[6] According to the provision of the Indiana Code relied on by Hobbs:

> If more than three hundred sixty-five (365) days have elapsed since the convicted person began serving the sentence, the court may reduce or suspend the sentence and impose a sentence that the court was authorized to impose at the time of sentencing. The court must incorporate its reasons in the record.

Ind. Code § 35-38-1-17(c) (2014). But this provision became effective on July 1, 2014, as part of our General Assembly's overhaul of our criminal code pursuant to P.L. 158-2013 and P.L. 168-2014. It was not in effect at the time Hobbs committed his offense against L.M.; rather, the law in effect at that time stated in relevant part: "If more than three hundred sixty-five (365) days have elapsed since the defendant began serving the sentence and after a hearing at which the convicted person is present, the court may reduce or suspend the sentence, *subject to the approval of the prosecuting attorney*." I.C. § 35-38-1-17(b) (2005) (emphasis added); *see also Harris v. State*, 897 N.E.2d 927, 928-29 (Ind. 2008) ("The sentencing statute in effect at the time a crime is committed governs the sentence for that crime.").

Despite Hobbs' assertions to the contrary on appeal, there is no question that the current version of Indiana Code Section 35-38-1-17 does not apply to him. I.C. § 1-1-5.5-21 ("The general assembly does not intend the doctrine of amelioration . . . to apply to any SECTION of P.L. 158-2013 or P.L. 168-2014"); *see also Marley v. State*, 17 N.E.3d 335, 340 (Ind. Ct. App. 2014) ("It is abundantly clear . . . that the General Assembly intended the new criminal code to have no effect on criminal proceedings for offenses committed prior to the enactment of the new code."), *trans. denied*. Hobbs' arguments to the contrary are without merit.[1]

Elsewhere in his appellate brief, Hobbs asserts that his convictions violate Indiana's prohibitions against double jeopardy because they "stemmed from the same incident and were based upon the same facts." Appellant's Br. at 11. Hobbs also argues that his sentence violates the Proportionality Clause of Indiana's Constitution, Ind. Const. art. 1 § 16, and is inappropriate under Indiana Appellate Rule 7(B). But these issues are not available to Hobbs in a motion for sentence modification and either have been or should have been raised on direct appeal. In particular, Hobbs' Appellate Rule 7(B) claim was raised on direct appeal and rejected. "If an issue was known and available, but not raised[,] on direct appeal, it is waived. If it was raised on appeal[] but decided adversely, it is res judicata." *Timberlake v. State*, 753 N.E.2d 591, 597

---

1 Hobbs suggests that Indiana Code Section 1-1-5.5-21 is unconstitutional because it is either overbroad or vague. These suggestions are not supported by cogent reasoning, and we do not consider them. Ind. Appellate Rule 46(A)(8)(a).

(Ind. 2001). Thus, we affirm the trial court's denial of Hobbs' petition for modification of sentence.

[9] Affirmed.

Mathias, J., and Bradford, J., concur.