

FILED

Apr 21 2015, 9:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Special Assistant to the State Public
Defender
Plainfield, Indiana

ATTORNEY FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeremy Ellis,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 21, 2015

Court of Appeals Case No.
44A04-1407-CR-379

Appeal from the LaGrange Circuit
Court

The Honorable J. Scott VanDerbeck,
Judge

Cause No. 44C01-1305-FD-82

**Najam, Judge.**

## Statement of the Case

Jeremy Ellis appeals his convictions and sentence for theft and attempted theft, both as Class D felonies, following a jury trial. Ellis raises three issues for our review. First, he asserts that his two convictions violate Indiana's prohibitions

against double jeopardy either because the prosecutor told the jury that it should consider Ellis' first offense as evidence of Ellis' intent to commit the second offense or because the prosecutor expressly stated that the State was seeking only one conviction against Ellis. The first statement is not problematic under Indiana's Double Jeopardy Clause. And while we do not approve of the entry of multiple convictions when the prosecutor does not request it, nonetheless Ellis was charged with multiple offenses and the evidence demonstrated multiple offenses. Thus, the error here, if any, is not an error under the actual evidence test of Indiana's Double Jeopardy Clause.

[2] Ellis also appeals his sentence. In particular, he asserts that his aggregate term of two and one-half years, with six months suspended to probation, for the theft of about $30 worth of goods for each offense is inappropriate. For support of this argument, Ellis cites the current version of Indiana's criminal code, which was not in effect at the time he committed his offenses. We reject Ellis' attempt to use Indiana Appellate Rule 7(B) to give retroactive effect to the new criminal code.

[3] Finally, Ellis asserts that the trial court erred when it denied his motion for additional credit time. But Ellis has not supported this argument with citations to any part of the appendix or record on appeal that demonstrates his claims regarding time served and credit time. Thus, we are obliged to reject this argument.

[4] We affirm Ellis' convictions and sentence.

# Facts and Procedural History

[5] On May 13, 2013, Nathaniel Burkey was working at Schlemmer's Hardware Store ("the store") in LaGrange when he observed Ellis, who had been inside the store, exit through the store's north doors while carrying a bag of fertilizer and a can of drain opener. Burkey approached Ellis at Ellis' car, which was parked "directly north of the north doors," and he asked Ellis if he had paid for the items he was carrying. Tr. at 18. Ellis said he had, and Burkey asked to see a receipt. Ellis then produced a receipt from a CVS pharmacy. Burkey took possession of the two items and informed Ellis that he would have to come back inside and pay for the items if he wanted them. Ellis went back inside with Burkey and asked another employee to charge the items to an account under the last name of "Ellis." *Id.* at 20-21. But because the only account under such a name was for a person not related to Ellis, the employee refused to charge the account. Ellis then left without the items. The store's owner informed the local sheriff's department of the incident immediately after Ellis had left.

[6] About thirty minutes later, another store employee observed Ellis return to the store, and she alerted the other employees and the owner. The owner contacted the sheriff's department. Burkey, who was standing by the cash registers on the south side of the store, observed Ellis walk past the cash registers and out the store's west entrance with a bag of fertilizer and a can of drain opener. Ellis did not stop at the cash registers and did not pay for the two items. The total cost of the two items was between $29 and $30.

[7] While Ellis was on his way to his car, LaGrange County Sheriff's Deputy Derek Baldridge arrived and engaged Ellis. Deputy Baldridge asked Ellis if he had paid for the two items, and Ellis stated that he had. Deputy Baldridge then asked Ellis to go inside with him. Inside, the store's employees informed Deputy Baldridge that Ellis had not paid for the items. Deputy Baldridge then arrested Ellis.

[8] On May 15, 2013, the State charged Ellis with theft, as a Class D felony. More than a year later, on May 22, 2014, the State added a second charge for attempted theft, also as a Class D felony. Both charges were for the removal of a bag of fertilizer and a can of drain opener from the store on May 13, 2013. At the ensuing jury trial in June of 2014, the State's opening argument and presentation of evidence explained the sequence of events at the store on May 13, 2013, but did not specifically relate the State's evidence to one charge or the other.

[9] In its closing argument, the State informed the jury that two distinct crimes had occurred on May 13, 2013:

> there's two crimes here. He's charged—one is theft, one is attempted theft, okay. So when we initiated this case, I think, "Man, this is pretty obvious, he walks out of the store not once, but twice with the goods." That's theft.
>
> The other thing though I'm thinking this is a—maybe somebody says, "Well, he didn't get all the way out. He didn't even make it out of the parking lot." And you know, I don't think that Derek Baldridge should have to sit in his squad car . . . and watch that guy get in his car and speed away. . . . [B]ut if you do, if . . . you

> think he should have to wait that long, then the crime is attempted theft.  I think it would [be] a lot easier if you just said it was a theft . . . .

*Id.* at 98-99.  But then the State created confusion as to whether it was seeking one conviction or two:

> we'll give [Ellis] a mulligan on the first trip; he got caught.  Store got its goods back, no big deal.

> But . . . it's really kind of bullish to come back 30 minutes later and try to do the same thing . . . .

> \* \* \*

> If you think . . . he had to get out of the parking lot . . . then I guess you would find him guilty of attempted theft.

*Id.* at 103-04.

[10]  Defense counsel seized on this confusion in his closing argument to the jury and emphasized it:

> I guess we're only talking about this second trip, not the first trip, according to the Prosecutor's final argument there.  [Ellis] got a pass on that.  He came back in and gave the merchandise . . . back, tried to pay for it on a charge account that [Ellis] thought was there and wasn't there and left.  So he's not charged with theft or attempted theft on that occasion.  We're talking about the second occasion when he walked out the west door and then was stopped by Officer Baldridge.

*Id.* at 107.

[11]  In its rebuttal, the State clarified its position on this point as follows:

> Mr. Ellis's first entrance into the store is not what he's being charged with. [Defense counsel] is right.
>
> But that doesn't mean you can . . . compartmentalize all these little facts and ignore them. I want you to judge Jeremy Ellis on the whole picture on what he did during this 30 to 60 minute transaction, okay?
>
> And you don't have to agree with me on this, but when he comes back, the point that he breaks the law is probably when he walks out that west door and doorbells go . . . off. Because at that point, he's made a conscious decision that "I'm not going to pay for this $29 to $30 worth of goods." He said, "I'm going to try this again."
>
> * * *
>
> So I mean . . . I agree with [defense counsel] in that [Ellis is] not charged based upon the first transaction, but the first transaction is helpful because it helps to tell you what his intention is, what was going on up here in his mind, okay?
>
> * * *
>
> When he came back into that store and he picked up the drain cleaner and he picked up the fertilizer and headed out the side door, that's a substantial step. That is. That tells you what he's thinking based upon what he's done just before that and what he did the 30 or 45 minutes before when he came in the first time.
>
> * * *
>
>  . . . I think if you add all those things up . . . it's a theft . . . . I think it's a theft when he walks out the west door with these items in his hands and he hasn't paid for them.

> . . . So I think that's a theft, but if you don't think that's quite
> enough, then at least grant me that . . . he's trying to get away
> without paying, and that[,] therefore, it's attempted theft.

*Id.* at 110-13.

[12]     However, in its jury instructions, the court informed the jurors that they were "to consider the law and the evidence as it may apply to each count individually and separately from the other counts." *Id.* at 128. Ellis did not object to this instruction or tender an alternative instruction. The jury then found Ellis guilty of both theft and attempted theft in separate verdicts,[1] and, again without objection, the trial court entered its judgment of conviction on both counts.

[13]     During the ensuing sentencing hearing, the State argued that the instant offenses were part of "a pattern of behavior by [Ellis]" that "revolved around methamphetamine." Sent. Tr. at 7. The trial court found as an aggravating circumstance that "there are several pending cases with offense dates after this pending case involving alleged manufacturing or possession of methamphetamines." Appellant's App. at 51. The court also found that Ellis' criminal history was an aggravating circumstance. The court then ordered Ellis to serve an aggregate term of two-and-one-half-years, with six months

---

[1] It is not clear which of the two events the jury concluded was the completed theft and which was the attempted theft.

suspended to probation.  Thereafter, Ellis filed a motion to apply additional credit time to his sentence, which the trial court denied.  This appeal ensued.

## Discussion and Decision

### *Issue One:  Double Jeopardy*

[14]   On appeal, Ellis first asserts that his two convictions violate Indiana's prohibitions against double jeopardy.  Although Ellis did not object on double jeopardy grounds below, questions of double jeopardy implicate fundamental rights and, as such, may be raised for the first time on appeal, or even by this court *sua sponte*.  *See Smith v. State*, 881 N.E.2d 1040, 1047 (Ind. Ct. App. 2008). Whether convictions violate double jeopardy is a pure question of law, which we review de novo.  *Rexroat v. State*, 966 N.E.2d 165, 168 (Ind. Ct. App. 2012), *trans. denied*.

[15]   Article 1, Section 14 of the Indiana Constitution prohibits double jeopardy, providing that "[n]o person shall be put in jeopardy twice for the same offense." As our supreme court has explained:

> In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999)[,] this Court concluded that two or more offenses are the same offense in violation of article 1, section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense.  Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts.  *Id.* at 53.  To find a double jeopardy violation under this test, we must conclude that there is "a reasonable

possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* The actual evidence test is applied to all the elements of both offenses. "In other words . . . the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).[2]

Our precedents "instruct that a 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008) (citing cases). The reasonable possibility standard "fairly implements the protections of the Indiana Double Jeopardy Clause and also permits convictions for multiple offenses committed in a protracted criminal episode when the case is prosecuted in a manner that insures that multiple guilty verdicts are not based on the same evidentiary facts." *Richardson*, 717 N.E.2d at 53 n.46. The existence of a "'reasonable possibility' turns on a practical assessment of whether the [fact finder] may have latched on to exactly the same facts for both convictions." *Lee*, 892 N.E.2d at 1236. We

---

[2] Shortly after our supreme court's opinion in *Spivey*, this court, discussing *Spivey*, stated:

> the *Richardson* actual evidence test, as applied by our Supreme Court, has found double jeopardy to be violated where the evidentiary fact(s) establishing one or more elements of one challenged offense establish all of the elements of the second challenged offense. For there to be a double jeopardy violation it is not required that the evidentiary facts establishing *all* of the elements of one challenged offense also establish *all* of the essential elements of a second challenged offense.

*Alexander v. State*, 772 N.E.2d 476, 478 (Ind. Ct. App. 2002) (emphases in original), *trans. denied*. Of course, this language from *Alexander* is inconsistent with our supreme court's statement in *Spivey* that "the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, *but not all*, of the essential elements of a second offense." *Spivey*, 761 N.E.2d at 833 (emphasis added). As our supreme court later succinctly stated: "The actual evidence test is applied to all the elements of both offenses." *Garrett*, 992 N.E.2d at 719.

> evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel. *Id.* at 1234.

*Garrett v. State*, 992 N.E.2d 710, 719-20 (Ind. 2013) (last alteration original).[3]

[16]    Ellis' two convictions do not violate the actual evidence test of Indiana's Double Jeopardy Clause. Each conviction was established by separate and distinct evidentiary facts. For one conviction, the State demonstrated the following: Ellis removed items from the store without authorization; he exited the store through its north doors; and he proceeded to his car, only to be stopped there by a store employee. For the other conviction, the State separately demonstrated the following: about thirty minutes after the first offense, Ellis again removed items from the store without authorization; he exited the store through its west doors; and he proceeded to his car, only to be stopped there by a police officer. The State's evidence plainly delineated two events, and there is no reasonable possibility that the jury "latched on to exactly the same facts for both convictions." *Lee*, 892 N.E.2d at 1236.

[17]    Moreover, the State's opening argument clearly described two separate events. The State's initial statement to the jury in its closing argument was that "there's two crimes here." Tr. at 98. And the trial court instructed the jury to consider the evidence for "each count individually and separately from the other counts." *Id.* at 128.

---

[3] Ellis does not challenge the validity of his convictions under either the Fifth Amendment to the United States Constitution or under the statutory elements test of the Indiana Constitution.

[18] Nonetheless, on appeal Ellis zeroes in on other comments made by the State during its closing argument, namely, its statement in its rebuttal that the jurors should consider the first offense as evidence of Ellis' intent to commit the second offense. But the State's comment does not demonstrate a double jeopardy violation under the actual evidence test. To the contrary, at most the State asked the jury to use the evidentiary facts underlying the first offense to establish "only one . . . , but not all, of the essential elements of a second offense," namely, Ellis' intent. *Spivey*, 761 N.E.2d at 833. This is not sufficient to establish a violation of Indiana's Double Jeopardy Clause. *Id.*; *see also Garrett*, 992 N.E.2d at 719 ("The actual evidence test is applied to all the elements of both offenses.").

[19] In his reply brief, Ellis takes a different tack and instead argues that the State on appeal is estopped from disclaiming the local prosecutor's apparent concession during closing that "[Ellis is] not charged based upon the first transaction." Tr. at 110-11. But Ellis raised the issue of double jeopardy in his brief on appeal, and the State is permitted to respond to that argument in its brief. Thus, insofar as Ellis' reply brief asserts that the State may not respond to the argument raised by Ellis on appeal, Ellis' assertion is not well taken.

[20] Moreover, insofar as Ellis' argument in his reply brief is a new argument on appeal—namely, that one of his convictions must be reversed in accordance with the prosecutor's apparent concession during his closing argument—we note that Ellis did not object to the trial court's instructions that the jury consider the evidence for "each count individually and separately from the

other counts," *id.* at 128; Ellis did not proffer his own jury instructions to hold the State to its apparent concession; and he did not object to the trial court's entry of multiple convictions against him. He may not raise these arguments for the first time on appeal, let alone in a reply brief, and we will not allow Ellis to use a double jeopardy claim to salvage an argument that he did not preserve with a proper objection in the trial court.

[21] All of this is not to say that we approve of the entry of two convictions when the prosecutor stated in his closing argument that the State was seeking only one conviction. But, as the jury here was instructed, the "final arguments are not evidence"; rather, they are an "attempt to persuade you to a particular verdict. You may accept or reject these arguments as you see fit." Voir Dire Tr. at 69. The jury here plainly rejected the prosecutor's argument in his rebuttal and instead found Ellis guilty of the two crimes demonstrated by the evidence.

[22] In sum, the only argument properly raised by Ellis on appeal is an issue of double jeopardy, and the error here, if any, does not violate double jeopardy under the actual evidence test. As such, we affirm Ellis' convictions for theft and attempted theft.

### Issue Two: Ellis' Sentence

[23] Ellis next asserts that his sentence is inappropriate under Indiana Appellate Rule 7(B). Article 7, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial

court." *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id.* Revision of a sentence under Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offense and his character. *See* Ind. Appellate Rule 7(B); *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." *Roush*, 875 N.E.2d at 812 (alteration original).

[24] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224. Pursuant to the law in effect at the time Ellis committed his offenses, the sentencing range for a Class D felony was between six months and three years, with an advisory term of one and one-half years. Ind. Code § 35-50-2-7 (2012). Thus, Ellis faced a potential maximum executed term of six years for his two Class D felony convictions.

Ellis asserts that his aggregate term of two and one-half years, with six months suspended to probation, is inappropriate in light of the nature of the offense because the value of the items he stole or attempted to steal was about $30 on each occasion. He argues that his sentence is inappropriate in light of his character because, "had he committed the offense today, he would be facing one year in prison, even with an extensive criminal history." Appellant's Br. at 7. We cannot agree with Ellis' arguments on appeal.

Ellis' sentence is not inappropriate. Although the value of the items Ellis removed from the store is not substantial, that was not the only legitimate concern before the trial court. Rather, regarding the nature of the offenses, within thirty minutes of the first offense Ellis committed the second offense, which, as the State noted to the jury, was "bullish." Tr. at 103. The items Ellis removed from the store were, as the State argued to the trial court and again on appeal, "commonly used to manufacture methamphetamine." Appellee's Br. at 14. And, upon being caught by a store employee, Ellis attempted to have the items placed on the account of a third party who happened to share Ellis' last name. Ellis also attempted to deceive Burkey by producing a CVS receipt, and he lied to Deputy Baldridge when the deputy approached Ellis after the second offense.

Neither is Ellis' sentence inappropriate in light of his character. Ellis has an extensive criminal history, including a prior felony conviction for forgery, as a Class C felony. At the time of the sentencing hearing he had numerous methamphetamine-related charges pending against him. And Ellis' bullish and

deceptive behavior during his commission of the instant offenses demonstrates his indifference to the law.[4]

[28] We also reject Ellis' argument that the sentencing scheme currently in effect is somehow informative of the sentence Ellis should have received. On this point, Ellis asserts (notably, without citation) that the sentencing statutes that would apply to him had he committed the instant offenses after June 30, 2014, rather than before that date, allow for a maximum term of one year on these facts. *See* I.C. §§ 35-43-4-2 (2014); 35-50-3-2 (2014). But it is well established that "[t]he sentencing statute in effect at the time a crime is committed governs the sentence for that crime." *Harris v. State*, 897 N.E.2d 927, 928-29 (Ind. 2008). Indeed, Indiana Code Section 1-1-5.5-22(b) explicitly states that "[t]he general assembly does not intend the doctrine of amelioration . . . to apply to any SECTION of [the new criminal code]." And we have repeatedly recognized that the new criminal code does not apply retroactively. *E.g.*, *Marley v. State*, 17 N.E.3d 335, 340 (Ind. Ct. App. 2014), *trans. denied*. We will not use our authority under Indiana Appellate Rule 7(B) to, in effect, give retroactive effect to the new criminal code. *Cf. Hobbs v. State*, ___ N.E.3d ___, 2015 WL 409469 (Ind. Ct. App. 2015) (rejecting the defendant's argument that he was entitled to a sentence modification by applying the new criminal code instead of the

---

[4] We need not consider the State's additional arguments against Ellis' character, which include letters Ellis wrote to the trial court judge.

relevant provisions of the code in effect at the time of his offense), *not yet certified*.

[29] In sum, we cannot say that Ellis' aggregate term of two and one-half years, with six years suspended, is inappropriate. We affirm Ellis' sentence.

### Issue Three: Credit Time

[30] Ellis' final argument on appeal is that the trial court miscalculated his credit for time served while he awaited his trial. Specifically, Ellis claims that he should have received thirty-eight days credit for time he served in the Allen County Jail, which was for another charge but while Ellis was out on bail for the instant offenses. Ellis claims that the thirty-eight days is credit for nineteen days actually served, namely, from February 21, 2014, when the LaGrange Circuit Court placed a hold on Ellis after he had failed to appear for a hearing on the instant offenses, through March 11, 2014, when Ellis was released from the Allen County Jail after he had pleaded guilty to the Allen County offense. Ellis further claims that, for the Allen County offense, he was sentenced to ninety days executed, but he was in the Allen County Jail for 105 days.

[31] We are obliged to conclude that Ellis has waived this argument for our review because he does not support his claims with appropriate citations to the appendix or record on appeal. Specifically, in relevant part Ellis first cites page 60 of the Appellant's Appendix, but that page does not exist.[5] Even if it did

---

[5] We note that the State also cites page 60 of the Appellant's Appendix in its brief.

exist, however, according to the parties' explanations this document was simply Ellis' motion for additional credit time and his own assertions regarding the validity of his request; it was not an independently created record that demonstrated time Ellis actually did or did not serve in Allen County.

[32] Ellis also cites the "Jun. 11, 2014 PSI, pg. 5," *see* Appellant's Br. at 8, which is an unnumbered page[6] in a stack of unnumbered and confidential pages separate from the Appellant's Appendix. While we were able to locate this document despite the conspicuous lack of consecutive pagination, it is not clear how the cited portion supports Ellis' argument on appeal. That information simply states that a charge against Ellis was filed in the Allen Superior Court on December 4, 2013, that it was disposed of on the sentencing date, which was March 11, 2014, and that Ellis pleaded guilty to a Class A misdemeanor, for which he received ninety days incarceration. The document does not state the time Ellis spent in the Allen County Jail or whether the ninety-day sentence was for time actually served or included credit time.

[33] Without information that demonstrates both the dates Ellis was incarcerated in the Allen County Jail and how the Allen Superior Court did or did not allocate his time served in that jail to his Allen County offense, we cannot review the trial court's denial of Ellis' request for additional credit time for the instant

---

[6] To be sure, it is internally numbered as page 5, but that is hardly helpful when it is buried in a stack of other documents, some of which are internally numbered and some of which are not, and it is not numbered relative to the other documents within that stack.

offenses.  Thus, we hold that Ellis has waived this argument for our review, and we must affirm the trial court's denial of his request for additional credit time.

### *Conclusion*

[34] In sum, Ellis' two convictions do not violate Indiana's Double Jeopardy Clause, his sentence is not inappropriate in light of the nature of the offenses and his character, and we cannot say that the trial court erred when it denied Ellis' motion for additional credit time.  Thus, we affirm Ellis' convictions and sentence.

[35] Affirmed.

[36] Mathias, J., and Bradford, J., concur.