## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2016, 7:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shawn Towell,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 15, 2016<br><br>Court of Appeals Case No.<br>01A02-1603-CR-449<br><br>Appeal from the Adams Circuit Court<br><br>The Honorable Chad Kukelhan, Judge<br><br>Trial Court Cause No.<br>01C01-1305-FA-4 |

**Bailey, Judge.**

# Case Summary

Shawn Towell ("Towell") was convicted of ten criminal offenses, and now challenges five of those: his convictions for two counts of Dealing in Methamphetamine, as Class A felonies,[1] and one count each of Possession of Chemical Reagents or Precursors, as a Class C felony,[2] Possession of Methamphetamine, as a Class B felony,[3] and Possession of a Controlled Substance, as a Class C felony.[4] He also challenges his aggregate forty-year sentence. We affirm eight convictions: one count each of Dealing in Methamphetamine, Possession of Chemical Reagents or Precursors, Possession of a Controlled Substance, Possession of Paraphernalia, Maintaining a Common Nuisance, Taking a Minor to a Nuisance, Battery, and Possession of Marijuana.[5] We affirm the aggregate sentence. We remand to the trial court with instructions to vacate the second conviction for Dealing in Methamphetamine and the conviction for Possession of Methamphetamine.

# Issues

---

[1] Ind. Code § 35-48-4-1.1.

[2] I.C. § 35-48-4-14.5.

[3] I.C. § 35-48-4-6.1.

[4] I.C. § 35-48-4-7.

[5] Towell does not challenge his convictions for Possession of Paraphernalia, a Class A misdemeanor, I.C. § 35-48-4-8.3., Maintaining a Common Nuisance, as a Class D felony, I.C. § 35-48-4-13, Taking a Minor to a Nuisance, a Class A misdemeanor, I.C. § 35-48-4-13.3, Battery, as a Class B misdemeanor, I.C. § 35-42-2-1, or Possession of Marijuana, as a Class A misdemeanor, I.C. § 35-48-4-11.

Towell presents four issues for review:

    I.      Whether Towell was subjected to double jeopardy when he was convicted of Possession of Methamphetamine, Possession of Chemical Reagents or Precursors, and two counts of Dealing in Methamphetamine;

    II.     Whether the statutory definition of youth program center is unconstitutionally vague such that the enhancement of Towell's drug-related offenses was fundamental error;

    III.    Whether the trial court abused its sentencing discretion by recognizing an improper aggravator; and

    IV.    Whether the aggregate forty-year sentence is inappropriate.

# Facts and Procedural History

In May of 2013, Towell and Jayla Currie ("Currie") were living in a garage attached to the residence of Angela Teeter ("Teeter"), Currie's mother. Towell and Currie had obtained guardianship of Towell's three-year-old niece, S.T., and S.T. was also staying in the garage.

On May 6, 2013, Towell's sister, Linda Towell ("Linda") came to the garage and tried to take S.T. An argument ensued, and Towell pushed Linda to the ground. Linda summoned police assistance.

When City of Berne police officers arrived, they obtained permission from Teeter to search the garage. During the initial sweep of the garage, Detective

James Newbold and Lieutenant Dean Amstutz made observations that caused them to seek and obtain a search warrant. Ultimately, the Indiana State Police executed a warrant and a search of the premises yielded drug paraphernalia, HCL generators, organic solvents, lithium battery casings, a coffee filter with methamphetamine residue, a gallon of acetone, drain cleaner, digital scales, Xanax, marijuana, and pseudoephedrine.

[6] Towell was charged with ten criminal counts and brought to trial before a jury. On January 7, 2016, the jury convicted Towell as charged. On February 2, 2016, the trial court imposed a sentence of forty years each for two counts of Dealing in Methamphetamine, one year for Possession of Paraphernalia, two years for Maintaining a Common Nuisance, one year for Taking a Minor to a Nuisance, six years for Possession of Chemical Reagents or Precursors, 180 days for Battery, one year for Possession of Marijuana, ten years for Possession of Methamphetamine, and six years for Possession of a Controlled Substance. All sentences were to be served concurrently, providing for an aggregate sentence of forty years. This appeal ensued.

## Discussion and Decision

### Double Jeopardy

[7] Towell contends that his convictions for Possession of Methamphetamine, Possession of Precursors, and two counts of Dealing in Methamphetamine violate the Double Jeopardy Clause of the Indiana Constitution. Article 1, Section 14 provides that "[n]o person shall be put in jeopardy twice for the

same offense." Determining whether multiple convictions violate the prohibition against double jeopardy is a question of law that this Court reviews de novo. *Sloan v. State*, 947 N.E.2d 917, 920 (Ind. 2011).

[8] In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999), our Supreme Court concluded that two or more offenses are the same offense if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. According to Towell, his convictions violate the actual evidence test.

[9] Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To find a double-jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* There is no double-jeopardy violation under the actual evidence test when the evidentiary facts establishing the essential elements of one offense also establish only one or even several of the essential elements of a second offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

[10] A person commits Dealing in Methamphetamine by knowingly or intentionally manufacturing methamphetamine or possessing methamphetamine with intent to deliver it. I.C. § 35-48-4-1.1. In Count 1, the State alleged in pertinent part:

"on or about May 6, 2013 in Adams County, State of Indiana, Shawn C. Towell did possess, with the intent to manufacture, methamphetamine, pure or adulterated, within one thousand feet of a youth program center, to-wit: the First Mennonite Church[.]" (App. at 53.) Count 2 alleged that Towell "on or about May 6, 2013 … did knowingly or intentionally manufacture methamphetamine, pure or adulterated, within one thousand (1000) feet of a youth program center, to-wit: the First Mennonite Church[.]" (App. at 53.) In Count 6, the State alleged that Towell possessed, with intent to manufacture methamphetamine, two or more of: organic solvents (Coleman fuel and acetone), sodium hydroxide (lye), ammonium sulfate (fertilizer) and sulfuric acid (liquid fire drain cleaner), and possessed those items within 1000 feet of the First Mennonite Church youth program center. In Count 9, the State alleged that, on or about May 6, 2013, Towell knowingly or intentionally possessed methamphetamine within 1000 feet of the First Mennonite Church youth program center.

[11]     Concerning the items recovered in Towell's garage, the State elicited testimony from Detective Newbold, Lieutenant Amstutz, and Indiana State Police Trooper Tim Myers. The officers collectively testified to the recovery of items indicative of methamphetamine manufacture and consumption: folded foil burned black on the bottom, plastic vessels typical of HCL generators, a coffee filter with methamphetamine residue, acetone and salt in large quantities, drain opener, boxes of pseudoephedrine, camping fuel, lithium battery casings, and organic solvents. According to Trooper Myers, it appeared that someone "had

cooked" but he could not "tell if they were getting ready to cook." (Tr. at 408.) Currie testified that she had observed Towell manufacturing methamphetamine.

[12] In closing argument, the prosecutor directed the jury's attention to Detective Myers' testimony identifying "a laundry list" of precursors. (Tr. at 602.) Otherwise, the prosecutor did not specifically describe the evidence suggesting separate methamphetamine-related crimes nor did he argue that there were distinct events of cooking or possession. Rather, he advised the jury "the date is not an element of our offense here today." (Tr. at 598.) We agree with Towell that the manner in which the State presented its case here is akin to that in *Caron v. State*, where a panel of this Court found a reasonable possibility that the jury used the same evidence to establish the essential elements of two offenses, observing:

> [T]he State's theory of separate conduct was not presented to the jury through the trial court's instructions or the State's closing argument. The State chose to charge the crimes broadly, and its closing argument was no more specific.

824 N.E2d 745, 753-54 (Ind. Ct. App. 2005).

[13] However, we cannot agree with Towell that all four convictions likely rested upon the same physical evidence, the collective methamphetamine laboratory components. There was testimony and physical evidence from which the jury could reasonably conclude that at least one batch of methamphetamine had been produced. That is, Currie testified that Towell had cooked

methamphetamine and one coffee filter tested by the Indiana State Police Lab was found to contain methamphetamine. Additionally, there were precursors present in circumstances where the jury could have reasonably concluded that future production was intended. Accordingly, we affirm one conviction for Dealing in Methamphetamine and the conviction for Possession of Precursors. We instruct the trial court on remand to vacate the second conviction for Dealing in Methamphetamine and the conviction for Possession of Methamphetamine.

## Definition of Youth Program Center

[14] Towell's drug-related offenses (other than Possession of Marijuana) were enhanced because of their commission within 1000 feet of a youth program center. *See* I.C. § 35-31.5-2-357 (defining "youth program center" as a "building or structure that on a regular basis provides recreational, vocational, academic, social or other programs or services for persons less than eighteen (18) years of age" and "the real property on which the building or structure is located.") In each Information for an enhanced offense, the State alleged that Towell's conduct took place within 1000 feet of the First Mennonite Church ("the Church"). Towell asks that we vacate the enhanced penalties because they rest upon an unconstitutionally vague definition of "youth program center."

[15] According to Indiana Code Section 35-34-1-6(a)(3), "[a]n indictment or information is defective when … the statute defining the offense charged is unconstitutional or otherwise invalid." Indiana Code Section 35-34-1-4

provides that an indictment or information may be dismissed upon motion from the defendant. Generally, the failure to file a proper motion to dismiss a charging information raising a constitutional challenge waives the issue on appeal. *Pittman v. State*, 45 N.E.3d 805, 815 (Ind. Ct. App. 2015). An appellant who has failed to file such a motion to dismiss must demonstrate fundamental error in order to obtain relief. *Hayden v. State*, 19 N.E.3d 831, 840 (Ind. Ct. App. 2014), *trans. denied*. Fundamental error is error so prejudicial to the rights of the accused that he or she could not have received a fair trial. *Id.* at 841.

[16] Towell concedes that he filed no motion to dismiss and must demonstrate fundamental error. In order to support his assertion that he was denied fundamental due process because he was not given reasonable notice of what conduct was prohibited, he directs our attention to *Whatley v. Zatecky*, 833 F.3d 762, 784 (7th Cir. 2016) ("due process requires that the statute give a person an opportunity to conform his conduct to the law, a requirement that applies with equal force to the conduct used to enhance a sentence.")

[17] Walter Whatley was convicted under a now-repealed Indiana law[6] of possessing a little more than three grams of cocaine within 1000 feet of a "youth program center." *See id.* at 765. On direct appeal and in federal *habeas corpus* proceedings, Whatley challenged the Indiana law on grounds that the statutory definition of "youth program center" was unconstitutionally vague. *See id.* In

---

[6] I.C. § 35-41-1-29 [repealed July 1, 2012]. The definition of "youth program center" embodied in that statute mirrors the definition of I.C. § 35-31.5-2-357 effective July 1, 2013.

the Seventh Circuit Court of Appeals, Whatley appealed the denial of a *habeas* petition and his claim proceeded under 28 U.S.C. § 2254(d)(2):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim … resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In particular, Whatley contended that the statute in question was impermissibly vague because it defined "youth program center" as a facility with "regular" youth programs and "regular" is a word with multiple, inconsistent constructions. *Whatley*, 833 F.3d at 776. The Seventh Circuit agreed with Whatley's contention:

> In sum, a triad of factors convince us that the state courts were not simply wrong but unreasonable in applying federal law on vagueness in Whatley's case: (1) the use of the word "regular" in the definition of "youth program center" provides no objective standard, and thereby fails to place persons of ordinary intelligence on notice of the conduct proscribed and allows for arbitrary enforcement; (2) defendants are strictly liable for violating the terms of this nebulous sentencing enhancement, exacerbating the effect of the subjectivity; and (3) the consequences of violating this indeterminate strict liability provision are extreme: an increase in the sentencing range from 2-to-8 years to 20-to-50 years' imprisonment. The Indiana courts failed to narrow the statute by adding an intent element, by limiting application to the core cases of facilities such as YMCAs or Boys and girls Clubs, or by providing any objective standard to the meaning of "regular." There was no "reasonable basis for the

state court to deny relief." *Richter*, 562 U.S. at 98, 131 S.Ct. 770. As applied to Whatley, the statute delegated to the police, the prosecutor and the jury the task of determining what conduct was proscribed. No one in Whatley's position could have known that the Robinson Community Church would fall within the definition simply because it hosted a handful of children's events each week and otherwise bore no indicia of the children's activities within. We therefore reverse and remand[.]

*Whatley*, 833 F.3d at 784.

[19] Towell urges that we adopt the entirety of the reasoning in *Whatley*, a case in which the *habeas* petitioner advanced many specific contentions. However, Towell has not likewise developed a record as to the circumstances present in his case that would support a conclusion that the enhancement was unconstitutional as applied to him. Towell filed no motion to dismiss making a claim of facial unconstitutionality and notifying the Indiana Attorney General to defend the enactment. Likewise, he made no claim that a criminal statute was unconstitutional as applied to him or that he lacked notice that the Church operated a youth program center. The Church's Preschool Director, Greta Lehman, testified that the Church operated a preschool mornings and afternoons on Tuesday and Thursdays. Sixty children attended on those days, but on Wednesday "only the older children" attended." (Tr. at 426.) In light of the lack of a constitutional challenge in the trial court, the record of Towell's knowledge is sparse. When asked if he knew where the Church was located, Towell responded: "I knew of it, yes." (Tr. at 541.) Whereas the *Whatley* Court could discern that the Robinson Community Church "hosted a handful

of children's event each week[7] and otherwise bore no indicia of the children's activities within," 833 F.3d at 784, we are not privy to evidence of signage, preschool enrollment advertisements, or other notice that might be present in this case.

[20] It is noteworthy that, in granting Whatley relief, the Court stated: "It is the particular language of the Indiana statute that is at issue here, and *more importantly the unique circumstances of its application to Whatley*." *Id.* at 782 (emphasis added). Essentially, Towell wants to piggyback his claim onto Whatley's demonstration of statutory vagueness as applied to Whatley. Towell asserts that we should apply persuasive authority to find fundamental error in his case although he filed no motion to dismiss and testified that he was aware of the Church; and he further urges that we should vacate the enhancements because the Seventh Circuit might theoretically do so in the future. According to Towell, this would promote judicial economy. However, based upon the instant record, we cannot conclude that Towell was denied a fair trial.

## Sentencing Discretion

[21] Upon conviction of a Class A felony, Towell faced a sentencing range of twenty years to fifty years, with the advisory sentence being thirty years. I.C. § 35-50-2-4. Upon conviction of a Class B felony, he faced a sentencing range of six to

---

[7] The Robinson Community Church apparently hosted children's events for a few hours at a time, a few days each week. *Whatley*, 833 F.3d at 776.

twenty years, with the advisory sentence being ten years.  I.C. § 35-50-2-5.

Upon conviction of a Class C felony, he faced a sentencing range of two years

to eight years, with the advisory sentence being four years.  I.C. § 35-50-2-6.

Upon conviction of a Class D felony, Towell faced a sentencing range of

between six months and three years, with the advisory sentence being one and

one-half years.  I.C. § 35-50-2-7.  Upon conviction of a Class A misdemeanor,

he faced a sentence of not more than one year.  I.C. § 35-50-2-3.  Upon

conviction of a Class B misdemeanor, he faced a sentence of not more than 180

days.  I.C. § 35-50-3-3.  In imposing an aggregate sentence of ten years above

the advisory sentence for the most serious offense, the trial court referred to

Towell's criminal history, violation of bond, likelihood to re-offend, and family

circumstances.

[22]  Towell argues that the trial court abused its discretion by considering a

courtroom encounter outside the instant trial and sentencing hearing.

Specifically, the trial court referenced an earlier parenting time hearing at which

the trial court had presided.  According to Towell, the trial court considered

Towell's earlier conduct to be an aggravating circumstance.  According to the

State, the trial court was instead discussing its reasoning to support rejection of

Towell's proffered mitigator, undue hardship to his dependent.

[23]  "So long as the sentence is within the statutory range, it is subject to review

only for abuse of discretion."  *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.

2007), *clarified on other grounds*, 875 N.E.2d 218 (Ind. 2007).  This includes the

finding of an aggravating circumstance and the omission to find a proffered

mitigating circumstance. *Id.* at 490-91. When imposing a sentence for a felony, the trial court must enter "a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence." *Id.* at 491.

[24] The trial court's reasons must be supported by the record and must not be improper as a matter of law. *Id.* However, a trial court's sentencing order may no longer be challenged as reflecting an improper weighing of sentencing factors. *Id.* A trial court abuses its discretion if its reasons for imposing a particular sentence are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Hollin v. State*, 877 N.E.2d 462, 464 (Ind. 2007).

[25] Here, the trial court made an oral sentencing statement expressing its rationale and commingling the discussion of aggravating and mitigating circumstances. In relevant part, the trial court stated:

> I had to take [a]way your visitation with your daughter cause you came in here high. I know you were high that day. The testimony that day from the woman you had the child with was that she wanted you to see that child, but you were choosing to be a junky instead and that she was at one point, but she is not any longer and you questioned me sitting there, questioned me for that. You're a junky. That's why I kept you away from your daughter. You were going to hurt her. Anyway, that's another hearing for another time, Mr. Towell. But anyway when I see people here I want to remind everybody that my memory is not so short.

(Tr. at 663.)

It is not readily apparent whether the trial court found the prior conduct to be an aggravating circumstance relative to the instant aggregate sentence or was explaining why undue hardship was not found. Nonetheless, even if a trial court has relied upon an improper factor as an aggravating circumstance, the sentence may be upheld so long as other valid aggravating circumstances exist. *Bacher v. State*, 722 N.E.2d 799, 803 (Ind. 2000). Here, other valid aggravators exist. Towell had a criminal history, had violated the terms of his release on bond, and was facing several new criminal charges. Towell has not demonstrated that the trial court abused its sentencing discretion.

## Inappropriateness of Sentence

Under Indiana Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of such review is to attempt to leaven the outliers. *Id.* at 1225.

When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision, but we accord due consideration to that decision, recognizing the unique perspective of the trial court. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

Accordingly, a defendant "'must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.'" *Anglemyer*, 868 N.E.2d at 494 (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)). We "should focus on the forest – the aggregate sentence – rather than the trees – consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Cardwell*, 895 N.E.2d at 1225.

[29] As for the nature of Towell's offenses, there is nothing remarkable in the acquisition of the precursors and the amount of methamphetamine seized was minimal. However, the potential for harm was great, as Towell's activities took place in a garage where he resided with his girlfriend and a three-year-old child. The garage was attached to a residence where two adults and two minors lived.

[30] As for Towell's character, he was admittedly a long-term substance abuser. He had prior criminal convictions for Forgery, Escape, and Operating While Intoxicated. While awaiting trial on the instant charges, he violated his bond and was re-arrested. At the time of sentencing, he faced new charges for Dealing in Methamphetamine, Resisting Law Enforcement with a deadly weapon, and Possession of marijuana, paraphernalia, and methamphetamine precursors.

[31] Having reviewed the matter, we conclude that the trial court did not impose an inappropriate sentence under Appellate Rule 7(B), and the sentence does not

warrant appellate revision. Accordingly, we decline to disturb the sentence imposed by the trial court.[8]

# Conclusion

[32] Towell was subjected to double jeopardy when he was convicted of two counts of Dealing in Methamphetamine and one count of Possession of Methamphetamine. We remand with instructions to vacate one Dealing in Methamphetamine conviction and the conviction for Possession of Methamphetamine. Towell has not demonstrated that he was denied a fair trial. He has not demonstrated an abuse of sentencing discretion, and his forty-year aggregate sentence is not inappropriate.

[33] Affirmed in part, reversed in part, and remanded with instructions.

Riley, J., and Barnes, J., concur.

---

[8] Towell briefly argues that his sentence is an "outlier" with reference to the reduced penalty for Dealing in Methamphetamine after revisions to Indiana's Criminal Code effective July 1, 2014. However, our Supreme Court's guidance regarding attempts to "leaven the outliers" is with reference to reviewing the nature of the offense and the character of the offender with respect to a particular statutory crime. *Cardwell*, 895 N.E.2d at 1224. It does not provide a mechanism for comparing one statutory scheme to another.

We also observe that this Court has declined to take into account lesser penalties of the new criminal code when addressing the appropriateness of a sentence for a crime committed under prior law "because of the clear, unambiguous language of the savings clause statutes." *Marley v. State*, 17 N.E.3d 335, 341 (Ind. Ct. App. 2014). *See also Schaadt v. State*, 30 N.E.3d 1 (Ind. Ct. App. 2015), *Ellis v. State*, 29 N.E.3d 792, 801 (Ind. Ct. App. 2015).