**Jimmy MORRIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–1003–CR–165.**

Court of Appeals of Indiana.

Nov. 12, 2010.

Transfer Denied Jan. 21, 2011.

Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Marjorie Lawyer–Smith, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Jimmy Morris appeals the denial of his motion to modify his sentence placement. He claims the court erroneously interpreted Ind.Code § 35–38–1–17(b). We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 20, 1996, the State charged Morris with murder, voluntary manslaughter, carrying a handgun without a license, and two counts of attempted murder. Morris entered a plea of guilty to Class A felony voluntary manslaughter pursuant to a plea agreement that capped his sentence at the presumptive term of thirty years. The court imposed a thirty-year sentence on March 4, 1998.

On May 8, 2009, Morris asked to be placed on home detention for the remainder of his sentence. The court held a hearing, received legal briefs from the parties, and then denied Morris' request.

## DISCUSSION AND DECISION

■ Morris argues we must reverse the denial of his petition for modification because the trial court erroneously determined it did not have authority to modify his sentence under the controlling statute.[1]

When presented with an argument regarding the proper interpretation and application of a statute, we proceed as follows:

The first step in interpreting a statute is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Clear and unambiguous statutes leave no room for judicial construction. However when a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction. And when faced with an ambiguous statute, other well-established rules of statutory construction are applicable. One such rule is that our primary goal of statutory construction is to determine, give effect to, and implement the intent of the Legislature. To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. We also examine the statute as a whole. And we do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result.

*City of Carmel v. Steele,* 865 N.E.2d 612, 618 (Ind.2007).

The statute at issue provides:

1. The court also found

modification of placement is not appropriate at this time. While defendant should be commended for the positive achievements he has attained while incarcerated, the Court notes defendant has accumulated several conduct reports, most recently in August 2006 defendant was found to be a habitual conduct rule violator. According to the Progress Report, defendant was not

eligible for Work Release at the time of the preparation of the report.

(App. at 54.) Morris argues the court's interpretation of the statute made it "likely that the Court did not strongly consider the merits of the request." (Appellant's Br. at 10.) As we affirm the trial court's judgment based on its interpretation of the statute, we need not review the merits of Morris' petition.

If more than three hundred sixty-five (365) days have elapsed since the convicted person began serving the sentence and after a hearing at which the convicted person is present, the court may reduce or suspend the sentence, subject to the approval of the prosecuting attorney. However, if in a sentencing hearing for a convicted person conducted after June 30, 2001, the court could have placed the convicted person in a community corrections program as an alternative to commitment to the department of correction, the court may modify the convicted person's sentence under this section without the approval of the prosecuting attorney to place the convicted person in a community corrections program under IC 35–38–2.6.

Ind.Code § 35–38–1–17(b) (2001). The trial court found it had no authority under the second sentence of that statute to modify Morris' placement to community corrections because he had been sentenced prior to 2001.

Morris asserts that statute gives the trial court authority to modify the placement of a person sentenced before June 30, 2001, as long as the sentences were for crimes that were community corrections eligible after June 30, 2001. We disagree.

Adopting Morris' interpretation would require us to ignore the plain language in the statute. The legislature placed "June 30, 2001," as a modifier in the clause discussing when the sentencing was conducted. *See* Ind.Code § 35–38–1–17(b) ("if in a sentencing hearing for a convicted person conducted after June 30, 2001"). The legislature did not place that date as a modifier on the alternatives in placement available to the sentencing court.[2] Thus, to adopt Morris' interpretation of the statute, we would have to ignore the language used by the legislature, which we are not permitted to do. *See City of Carmel,* 865 N.E.2d at 618.

Even if the second sentence of Ind.Code § 35–38–1–17(b) were susceptible to more than one reasonable interpretation, Morris has not convinced us that the legislature intended that sentence to be applied to persons sentenced prior to June 30, 2001. As Morris notes, in 2001, "the legislature modified a number of other statutes that opened up community corrections eligibility to offenders that had not previously qualified." (Appellant's Br. at 7.) With regard to those other statutes, the public law in which the statutes were modified included a "savings clause," which explicitly stated the changes to those statutes were applicable only to those sentenced after the effective date of the statute.[3]

---

**2.** The statute did not say, for example: "[I]f the court could have placed the convicted person in a community corrections program *after June 30, 2001,* as an alternative to commitment to the department of correction, the court may modify the convicted person's sentence under this section without the approval of the prosecuting attorney to place the convicted person in a community corrections program under IC 35–38–2.6."

**3.** The savings clause to which Morris refers was contained in P.L. 17, 2001, Sec. 31, which provides:
    (a) IC 31–34–1–2, IC 35–38–1–7.1, IC 35–42–1–1, IC 35–45–6–1, IC 35–47–4–5, IC 35–48–1–18, IC 35–48–4–1, IC 35–48–4–2,

IC 35–48–4–3, IC 35–48–4–4, IC 35–48–4–6, IC 35–48–4–7, IC 35–48–4–10, IC 35–48–4–13, and IC 35–50–2–2, all as amended by this act, and IC 22–11–20–6, IC 35–48–4–4.1, IC 35–41–1–29, as added by this act, apply only to offenses committed after June 30, 2001.
    (b) IC 34–30–3–2, as added by this act, applies only to a cause of action that accrues after June 30, 2001. The enactment of IC 34–30–3–2, as added by this act, may not be considered in determining liability for a cause of action that accrues before July 1, 2001.

Morris notes the legislature did not pass a separate savings clause for "the amended version of I.C. 35–38–1–17(b)," (Appellant's Br. at 8), and he asserts this lack of a savings clause indicates the modification of Section 17 is not limited to those sentenced after the effective date of the statute.

We disagree. The modified sentencing statutes for which the legislature passed a savings clause, and the savings clause itself, were part of Public Law 17 (2001), while the modification of Ind.Code § 35–38–1–17 is found in Public Law 291 (2001). We would not have expected the legislature to include the modification of Ind. Code § 35–38–1–17 in the savings clause applicable to other modified sentencing statutes, as the Act modifying Ind.Code § 35–38–1–17(b) was passed over one month after the Act containing the savings clause.

█ Moreover, we note neither of the other modified statutes to which Morris points, which the legislature included in the savings clause, contain the type of date limitation within the text of the statute that was provided in the modified version of Ind.Code § 35–38–1–17(b). *See* P.L. 17–2001 § 13 (amending Ind.Code § 35–38–2.6–1) and P.L. 17–2001 § 30 (amending Ind.Code § 35–50–2–2). Thus, the absence of a separate savings clause for Ind. Code § 35–38–1–17(b) indicates the legislature did not believe such a clause was necessary in light of the date limitation provided in the text of the modified statute.

Finally, Morris asserts the change in Section 17(b) is "procedural and ameliorative," (Appellant's Br. at 9), and therefore must apply to him pursuant to the rationale expressed in *Willis v. State*, 567

N.E.2d 1170, 1172 (Ind.Ct.App.1991), *trans. denied.* Again, we disagree.

When Willis was sentenced, Ind.Code § 35–38–1–17(b) required a petition for modification of sentence to be filed within 180 days of sentencing. Before Willis filed his petition for modification, the statute had been altered to provide more time to file such a petition. Willis filed his petition more than 180 days after his sentencing. We held Willis could file pursuant to the modified statute because the change "was procedural, not substantive, [and] was ameliorative." *Willis*, 567 N.E.2d at 1172.

█ The modification to Ind.Code § 35–38–1–17(b), by contrast, is *not* merely procedural. Rather, it gives the trial court authority it did not previously have—the ability over 365 days after sentencing to move a petitioner from the Department of Correction to community corrections without the prosecutor's approval. That modification is more akin to the modification addressed in *State v. Crocker*, 270 Ind. 377, 385 N.E.2d 1143 (1979), a decision we distinguished in *Willis:*

> In [*Crocker*], our supreme court dealt with the question of whether a defendant could petition for reduction of his sentence under a modification to the statute enacted after his sentencing. At the time of sentencing in *Crocker*, IND. CODE § 35–7–1–1 permitted the trial court to suspend the remainder of a sentence anytime within six months of the time sentence was imposed. Subsequently, the statute was amended to permit the court to reduce or suspend within the six month period. In sustaining the State's appeal, the court noted the old statute did not authorize the

(c) IC 35–33–5–5, as amended by this act, applies to all actions of a law enforcement agency taken after June 30, 2001.

(d) The amendment of IC 35–38–2.6–1 by this act shall not be construed to reduce or invalidate a sentence imposed before July 1, 2001.

sentencing court to reduce the sentence as allowed by the new statute. The court found the general rule applicable, particularly because no retroactive provision was found in the new statute.

We believe *Crocker* to be distinguishable from [the facts in *Willis*]. In *Crocker*, there was a substantive change because the new statute gave the sentencing court new powers, that is, the power to reduce as well as suspend the remainder of the sentence. No such substantive change is involved here. At the time of sentencing IND.CODE § 35–38–1–17(b) permitted the sentencing court to modify a sentence, either by reduction or suspension, at any time within 180 days of sentencing. The amendment effective June 1, 1985, did not make any changes in the sentencing court's power over the sentence, but merely permitted, under certain circumstances, the sentencing court to consider sentence modification of the same kind more than 180 days after sentencing.

*Willis*, 567 N.E.2d at 1172. As we noted above, the modification of Ind.Code § 35–38–1–17(b) at issue herein did not simply give a convicted person additional time to file a petition, but rather gave the trial court the power, more than 365 days after sentencing, to modify a convicted person's placement without the prosecutor's approval. Therefore, the reasoning in *Willis* does not control. *See, e.g., Timberlake v. State*, 679 N.E.2d 1337, 1340 (Ind.Ct.App. 1997) (declining to follow *Willis* because modification of statute concerning filing of habitual offender information was not an "ameliorative sentencing amendment"). *See also Crocker*, 270 Ind. at 378, 385 N.E.2d at 1144 (finding modified statute does not have retroactive application when the "new statute relied upon ... has no provision for retroactive application").

For these reasons, the 2001 modification of Ind.Code § 35–38–1–17(b) did not give the trial court authority to modify Morris' 1998 sentence. Accordingly, we affirm the denial of his motion for modification.

Affirmed.

BAILEY, J., and BARNES, J., concur.