ATTORNEY FOR APPELLANTS

Douglas R. Long
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana



**FILED**
Jun 25 2015, 10:20 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dennis Johnson,<br>Raymond Johnson,<br>*Appellants-Defendants,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | June 25, 2015<br><br>Court of Appeals Case No.<br>48A05-1408-CR-390<br><br>Appeal from the Madison Circuit<br>Court<br><br>The Honorable Thomas Newman,<br>Jr., Judge<br><br>Cause No. 48D03-9609-CF-309<br>Cause No. 48D03-9609-CF-314 |

**Robb, Judge.**

# Case Summary and Issue

[1]  For their participation in a 1996 robbery gone awry, Dennis Johnson and Raymond Johnson were each convicted in 1997 of felony murder and carrying a handgun without a license and sentenced to serve an aggregate term of fifty-five years. In 2013, Dennis and Raymond filed petitions to modify their

respective sentences. Following a hearing in August of 2014, the trial court denied both petitions because the prosecutor did not consent to modification. In this consolidated appeal,[1] the Johnsons contend the trial court erred in requiring the prosecutor's consent because prior to the hearing on their petitions, the statute allowing sentence modifications was amended to remove that requirement. Concluding the trial court did not err in applying the prior version of the statute which required prosecutorial consent and in denying the petitions to modify on that basis, we affirm.

# Facts and Procedural History

[2] Although the Johnsons' cases have not run identical courses, the salient events are the same: the Johnsons participated in a crime in September 1996 during which Norval Peters was shot and killed. Each pleaded guilty to the charges against him and was sentenced to fifty-five years imprisonment. Raymond was sentenced on August 11, 1997, and Dennis was sentenced on September 29, 1997.

[3] On direct appeal, Raymond's sentence was affirmed. *R. Johnson v. State*, No. 48A02-9711-CR-791 (Ind. Ct. App., Feb. 27, 1998). Raymond's subsequent

---

[1] The case was consolidated by order of this court dated October 15, 2014, at the joint request of the appellants.

petition for post-conviction relief was denied. He sought modification of his sentence in 2007 and 2012, but was denied both times.

[4] Dennis did not pursue a direct appeal, but he filed a petition for post-conviction relief that was denied, and this court affirmed the denial on appeal. *D. Johnson v. State*, No. 48A04-1015-PC-198 (Ind. Ct. App., Apr. 29, 2002). He sought modification of his sentence in 2007 and 2008, but both petitions were denied.

[5] On December 19, 2013, Raymond and Dennis each filed a Request for Re-Entry Court Evaluation, which the trial court treated as a petition for sentence modification. The trial court initially denied the requests because the State objected, but then ordered a re-entry court evaluation and set the requests for a joint hearing. The hearing was originally scheduled for June 2014 but was ultimately not held until August 11, 2014. At the hearing, the Johnsons argued that they had shown by their conduct and accomplishments while incarcerated that they should be transitioned into a placement that would re-integrate them into society for the final years of their sentences. The Johnsons further noted:

> [T]he statute on modification changed July 1st and that's why we set this hearing after July 1st . . . . So I guess the question is, can you modify them [without the State's consent], the answer seems to be yes, and the second question is will you . . . .

Transcript at 21. The State responded that the version of the modification statute in effect at the time the Johnsons were sentenced should apply to their petitions and indicated that it did not consent to modification; the State also noted that "even if you determine that you can modify [without prosecutorial consent], my position is that you should not . . . ." *Id.* at 24.

[6] The trial court issued identical orders denying each request for modification:

> . . . the Court finds that the State of Indiana, despite the provisions of the new Indiana Criminal Code, retains the veto power over sentence modification requests regarding sentences issued before the new Indiana Criminal Code became effective.
>
> [The] Court finds that since the State of Indiana invoked its veto regarding this Sentence Modification request and because the sentence in this matter was levied before the new Indiana Criminal Code became effective, the request for sentence modification is denied.

Appellants' Appendix at 320 (with respect to Dennis) and 609 (with respect to Raymond). The Johnsons now appeal the trial court's order denying the requests to modify their sentences.

# Discussion and Decision

## I. Standard of Review

[7] The trial court in these cases concluded that the pre-2014 version of the modification statute continued to apply to sentences imposed prior to July 1, 2014. Because the Johnsons were sentenced in 1997, the trial court found that the consent of the prosecuting attorney was required before it could consider modifying their sentences. The prosecuting attorney did not consent, and the trial court denied the petitions.

[8] The Johnsons contend that the 2014 amendment to the modification statute is remedial or procedural and should be applied retroactively to their petitions for modification despite the savings clause. They therefore assert that the trial court may, in its discretion alone, grant their petitions for modification, and

they request that we remand their cases to the trial court for consideration on the merits.

[9] We review a trial court's decision regarding modification of a sentence for an abuse of discretion. *Gardiner v. State*, 928 N.E.2d 194, 196 (Ind. 2010). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or when the court misinterprets the law. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). Here, the parties differ as to the interpretation of certain statutes, which is a question of law. "Where the issue presented on appeal is a pure question of law, we review the matter de novo." *State v. Moss–Dwyer,* 686 N.E.2d 109, 110 (Ind. 1997).

## II. Applicable Version of the Statute

[10] A trial court generally has no authority over a defendant after sentencing. *State v. Harper*, 8 N.E.3d 694, 696 (Ind. 2014). A notable exception is Indiana Code section 35-38-1-17, which gives trial courts authority under certain circumstances to modify a sentence after it is imposed. *Id.* From 1991 until June 30, 2014, the relevant section of the sentence modification statute read:

> (b) If more than three hundred sixty-five (365) days have elapsed since the convicted person began serving the sentence and after a hearing at which the convicted person is present, the court may reduce or suspend the sentence, *subject to the approval of the prosecuting attorney*. . . .

Ind. Code § 35-38-1-17(b) (2012) (emphasis added).[2]

[11] Effective July 1, 2014, the criminal code was subject to a comprehensive revision pursuant to P.L. 158-2013 and P.L. 168-2014. The pertinent section of the sentence modification statute was amended to read:

> (c) If more than three hundred sixty-five (365) days have elapsed since the convicted person began serving the sentence, the court may reduce or suspend the sentence and impose a sentence that the court was authorized to impose at the time of sentencing. The court must incorporate its reasons in the record.

Ind. Code § 35-38-1-17(c) (2014). The legislature also included a specific savings clause as part of the 2014 revision of the criminal code, stating that:

> (a) A SECTION of P.L. 158-2013 or P.L. 168-2014 does not affect:
> (1) penalties incurred;
> (2) crimes committed; or
> (3) proceedings begun;
> before the effective date of that SECTION of P.L. 158-2013 or P.L. 168-2014. Those penalties, crimes, and proceedings continue and shall be imposed or enforced under prior law as if that SECTION of P.L. 158-2013 or P.L. 168-2014 had not been enacted.
>
> (b) The general assembly does not intend the doctrine of amelioration (see *Viceroy v. State*, 400 N.E.2d 1380 (Ind. 1980)) to apply to any SECTION of P.L. 158-2013 or P.L. 168-2014.

---

[2] The statute was amended several times between 1991 and 2014, most significantly in 2001 when the legislature amended subsection (b) to add a second sentence providing that "if in a sentencing hearing for a convicted person conducted after June 30, 2001, the court could have placed the convicted person in a community corrections program as an alternative to commitment to the department of correction, the court may modify the convicted person's sentence under this section without the approval of the prosecuting attorney to place the convicted person in a community corrections program under IC 35-38-2-6." The first sentence of subsection (b), however, remained substantively the same until the 2014 amendment, and it is this sentence alone that we are concerned with in this appeal.

Ind. Code § 1-1-5.5-21. The general rule in Indiana is that "[s]tatutes are to be given prospective effect only, unless the legislature unequivocally and unambiguously intended retrospective effect as well." *State v. Pelley*, 828 N.E.2d 915, 919 (Ind. 2005). An exception to this general rule exists for remedial or procedural statutes. *Martin v. State*, 774 N.E.2d 43, 44 (Ind. 2002). Although statutes and rules that are procedural or remedial *may* be applied retroactively, they are not *required* to be. *Pelley*, 828 N.E.2d at 919. Even for procedural or remedial statutes, "retroactive application is the exception, and such laws are normally to be applied prospectively absent strong and compelling reasons." *Hurst v. State*, 890 N.E.2d 88, 94 (Ind. Ct. App. 2008) (quotation omitted), *trans. denied*.

## A. Was the 2014 Amendment Remedial?

[12]  Remedial statutes are those that are intended to cure a defect or mischief in a prior statute. *Martin*, 774 N.E.2d at 44; *see also W.H. Dreves, Inc. v. Osolo Sch. Twp. of Elkhart Cnty.*, 217 Ind. 388, 394, 28 N.E.2d 252, 254 (1940) ("It is recognized that the legislature may, by a subsequent statute, correct any omission or irregularity in a proceeding which it might have dispensed with by a prior statute."). "If a statute is remedial, it should be liberally construed to advance the remedy for the mischief for which it was enacted." *Brown v. State*, 947 N.E.2d 486, 490 (Ind. Ct. App. 2011), *trans. denied*; *see also State v. Denny*, 67 Ind. 148, 155 (1879) ("There are three points to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy."). So, for instance, in *Martin*, our supreme court found a statute to be

remedial when it was enacted in response to a conflict in case law regarding its interpretation. 774 N.E.2d at 45. There, in revoking the defendant's probation, the trial court denied him credit for time served on home detention as a condition of his probation. At the time, Indiana Code sections 35-38-2-3 and 35-38-2.5-5 were silent as to whether a defendant was entitled to credit for time served on home detention as a condition of probation, leading to the conflict in case law. *Id.* While the defendant's appeal from the denial of credit time was pending, the legislature amended those sections to specifically allow such credit time. Our supreme court held the amendments were remedial, as the legislature apparently responded to the conflict of authority and "intended to cure a defect that existed in prior statutes, namely: silence concerning whether a defendant was entitled" to the credit. *Id.* Thus, the court applied the amendments retroactively to the defendant. *Id.*

[13] Here, however, there is no conflict in case law regarding the meaning or application of Indiana Code section 35-38-1-17(b). Our courts have consistently held that once the limited amount of time granted by the statute has passed, the trial court is without authority to reduce or suspend a sentence unless the prosecutor consents. *See, e.g.*, *State v. Fulkrod*, 753 N.E.2d 630, 633 (Ind. 2001) (although the trial court had attempted to reserve the right to modify the defendant's sentence, the trial court lacked authority to grant defendant's petition to modify because it was filed more than 365 days after defendant was sentenced); *Schweitzer v. State*, 700 N.E.2d 488, 492 (Ind. Ct. App. 1998) ("[I]f

the prosecuting attorney should oppose the motion for sentence modification, the trial court lacks authority to modify the sentence."), *trans. denied*.

[14] Moreover, there is no indication that the requirement of prosecutorial consent was an error; in fact, the statute's history suggests the opposite. The legislature enacted the prosecutorial consent provision of the modification statute in 1991 and did not eliminate it for over twenty years, during which time our legislature amended the statute in other ways. In 2014, the provision was amended as part of a comprehensive overhaul of the criminal code which suggests the amendment was made as part of a broader scheme and not to cure a singular defect or mischief in that provision alone. *See Brown*, 947 N.E.2d at 491 (amendment to statute governing eligibility for credit time while on home detention through a community corrections program as part of "wholesale changes to community corrections programs" was not remedial; that original statute had explicitly excluded those serving home detention from receiving credit time and amendment specifically lifted that restriction demonstrated a change in policy, not a defect). Therefore, we decline to find the 2014 amendment to Indiana Code section 35-38-1-17(b) to be remedial.

## B. Was the 2014 Amendment Procedural?

[15] The Johnsons also rely on *Willis v. State*, 567 N.E.2d 1170 (Ind. Ct. App. 1991), to support their position that the modification statute is procedural and the 2014 version should apply to their petitions.

[16]    We begin by noting that in *State v. Crocker*, 270 Ind. 377, 385 N.E.2d 1143 (1979), our supreme court considered the effect of an amendment to an earlier version of the sentence modification statute. At the time the defendants in that case were sentenced, the modification statute allowed the trial court to suspend the remainder of a sentence anytime within 180 days after a sentence was imposed. Three months after the defendants were sentenced, the statute was amended to allow a trial court to suspend *or reduce* a sentence within 180 days. The trial court determined that the new statute was ameliorative and applied retroactively to the defendants. Therefore, it suspended seven years of Crocker's fifteen year sentence and eight years of Sims's ten year sentence. The State appealed, and the court held that because the defendants were sentenced prior to the effective date of the new statute and because the legislature did not include a specific retroactivity provision with the amendment, the statute in effect at the time of sentencing applied. 270 Ind. at 378, 385 N.E.2d at 1144. "[T]here was no authority under that [original] provision for the court to suspend part of the defendants' sentences [and] the court's modifications of these sentences were erroneous." *Id.*

[17]    In *Willis*, the defendant was convicted and sentenced in February 1985, when the sentence modification statute provided that the court could reduce or suspend a sentence any time within 180 days after sentencing. In June 1985, the legislature amended the statute to permit the trial court, under certain circumstances, to consider modifying a sentence more than 180 days after sentencing, thus enlarging the time in which a defendant could petition for

modification. Recognizing the general rule that the statute in effect at the time of sentencing applies, the *Willis* court nonetheless held that the general rule was inapplicable to that case because "the statute under which [defendant] sought relief was procedural, not substantive . . . ." 567 N.E.2d at 1172. The court noted that in *Crocker*, "there was a substantive change because the new statute *gave the sentencing court new powers*, that is, the power to reduce as well as suspend the remainder of the sentence." *Id.* (emphasis added). Then the court noted that "[n]o such substantive change is involved here" because the amendment "*did not make any changes in the sentencing court's power over the sentence*, but merely permitted . . . the sentencing court to consider sentence modification of the same kind more than 180 days after sentencing." *Id.* (emphasis added).[3] Therefore, the court held the defendant was eligible to petition for modification under the amended statute. *Id.*

[18]  In *Morris v. State*, 936 N.E.2d 354 (Ind. Ct. App. 2010), *trans. denied*, we considered whether a 2001 amendment to the modification statute to add a provision allowing the trial court, after 365 days, to move a defendant from the Department of Correction to community corrections without the prosecutor's approval was procedural and must apply to a defendant sentenced prior to 2001 according to the *Willis* rationale. We held the amendment was more akin to the substantive amendment in *Crocker* that gave the sentencing court new powers

---

[3] Because it acknowledged the substantive change in the statute addressed by *Crocker*, the court in *Willis* did not hold that the statute itself was inherently procedural, just that the particular amendment at issue therein was a procedural change. *Id.*

than to the one in *Willis* that "simply [gave] a convicted person additional time to file a petition . . . . *Id.* at 358. Rather, the modification at issue "[gave] the trial court authority it did not previously have . . . ." *Id.* at 357. Accordingly, the amendment was not merely procedural and did not apply retroactively to give the trial court authority to modify the defendant's sentence. *Id.* at 358.

[19] We, like the court in *Morris*, find the 2014 amendment was not merely procedural. As noted above, a trial court generally has no authority over a defendant after sentencing. *Harper*, 8 N.E.3d at 696. The legislature has granted trial courts limited authority to modify a sentence pursuant to the provisions of Indiana Code section 35-38-1-17. At the time the Johnsons were sentenced, the statute gave the trial court authority to reduce or suspend a sentence in its discretion within 365 days, Ind. Code § 35-38-1-17(a), after which the trial court lacked authority to alter a sentence unless the prosecutor consented to the modification, Ind. Code § 35-38-1-17(b) (2012); *State v. Porter*, 729 N.E.2d 591, 592 (Ind. Ct. App. 2000). As noted in *Porter*, this statute does not *limit* a trial court's existing power; it *grants* authority the trial court would not otherwise have. 729 N.E.2d at 593 n.1. By eliminating the requirement of prosecutorial consent in the 2014 version of the statute, the legislature gave the trial court additional authority it did not previously have—the authority to unilaterally alter a defendant's sentence after the expiration of 365 days. This was a substantive change in the statute.

# C. Retroactivity

[20] Even if the amendment were remedial or procedural, we must have "strong and compelling reasons" to apply a statute retroactively, and absent clear legislative intent to the contrary, we give statutes only prospective effect. *Pelley*, 828 N.E.2d at 920. To ascertain legislative intent, "we look to the act as a whole and consider each section with reference to all the other sections and presume that the General Assembly would not intend an unreasonable or absurd result." *Brown*, 947 N.E.2d at 492. Not only did the legislature not expressly make section 35-38-1-17(b) retroactive in the 2014 revision, the act as a whole includes a savings clause from which it is clear that the legislature did not intend the new criminal code to have any effect on proceedings for offenses committed before July 1, 2014. Ind. Code § 1-1-5.5-21; *see Marley v. State*, 17 N.E.3d 335, 340 (Ind. Ct. App. 2014), *trans. denied*.[4]

[21] Every provision of the savings clause bars the Johnsons' petitions: their crimes were committed, their penalties incurred, and these proceedings were begun before July 1, 2014. The pre-2014 version of the statute which requires prosecutorial consent is therefore applicable to this petition for sentence

---

[4] We also note that the 2014 statute included a provision restricting a convicted person to filing only one petition for modification within any 365 day period and two petitions during any consecutive period of incarceration. Ind. Code § 35-38-1-17(h). If the statute were applied retroactively, it would have to be applied retroactively in whole – thus still precluding the Johnsons, each of whom has already filed two petitions for modification, from relief.

modification filed by the Johnsons.[5]  *See Carr v. State*, 2015 WL 2214051 at \*2 (Ind. Ct. App., May 12, 2015) (defendant filing petition on July 10, 2014 for modification of sentence imposed in 2000 not entitled to modification without prosecutorial consent under revised statute), *trans. pending*; *Swallows v. State*, 31 N.E.3d 544 (Ind. Ct. App. 2015) (defendant filing petition on October 1, 2014 for modification of sentence imposed in 1989 not entitled to modification under revised statute because of the plain meaning of the savings clause and legislative intent), *trans. pending*; *Hobbs v. State*, 26 N.E.3d 983, 985-86 (Ind. Ct. App. 2015) ("[T]here is no question that the current version of Indiana Code Section 35-38-1-17 does not apply" to a defendant who filed his petition for sentence modification on July 23, 2014 but was sentenced in 2006).

# Conclusion

[22] Because the 2014 amendment to Indiana Code section 35-38-1-17 was neither remedial nor procedural, and because the savings clause evinces the intent of

---

[5] We note, as does the dissent, that since this case was decided by the trial court and fully briefed to this court, section 35-38-1-17 has been amended again.  As this newest amendment did not become effective until May 5, 2015, it is not applicable to this case.  We do note that the 2015 version of the sentence modification statute includes language making the section applicable to persons who committed an offense or were sentenced prior to July 1, 2014 notwithstanding the savings clause.  Ind. Code § 35-38-1-17(a) (2015).  That the legislature amended this section less than one year after the overhaul of the criminal code indicates that the 2014 amendment did *not* "unequivocally and unambiguously" express any intent for retroactivity in that section.  *See Pelley*, 828 N.E.2d at 919.  Moreover, the 2015 revision continues the limit on the number of petitions that may be filed by a defendant and also re-inserts the requirement of prosecutorial consent for "violent criminals"—which the Johnsons would be by virtue of their convictions of murder, *see* Ind. Code §§ 35-38-1-17(d)(1)—to file a petition for sentence modification after 365 days from the date of sentencing, Ind. Code § 35-38-1-17(k).  Under any set of circumstances, the Johnsons are not entitled to the relief they seek – modification without prosecutorial consent.

the legislature to apply the new criminal code only prospectively, the 2014 version of the sentence modification statute does not apply to the Johnsons. Therefore, the trial court properly determined that, in the absence of prosecutorial consent, it had no authority to modify the Johnsons' sentences. The trial court's orders denying the petitions for sentence modification are affirmed.

[23]    Affirmed.

Brown, J., concurs.

Bailey, J., concurs in result with opinion.

Dennis Johnson,
Raymond Johnson,

*Appellants-Defendants,*

v.

State of Indiana,

*Appellee-Plaintiff*

Court of Appeals Case No.
48A05-1408-CR-390

**Bailey, Judge, concurring in result.**

[24] The majority concludes that, because the recent revisions to the sentencing modification statute are neither remedial nor procedural, a prior version of the sentencing modification statute applies to the Johnsons' petitions. I agree that the prior version of the statute applies in this case, but do so because of the time the Johnsons filed their petitions. I disagree that their dates of conviction and sentencing are controlling and therefore respectfully concur only in the result.

[25] On December 19, 2013, the Johnsons each filed a request for reentry court evaluation,[6] which, as the majority states, the trial court treated as petitions for

---

[6] A reentry court is a type of problem solving court that is focused on the needs of individuals who reenter the community after a period of incarceration and that may provide a range of necessary reintegration services for eligible individuals. *See* I.C. § 33-23-16-9.

sentence modification. The court initially denied the requests on December 26, 2013, but on February 3, 2014, entered orders directing the New Castle Correctional Facility to prepare "as soon as possible" progress reports on the Johnsons "so that the court may determine if a modification hearing can be set in this cause." (App. 302, 595.) The court set a hearing for June 2, 2014, after which the court again denied their requests for re-entry court evaluation due to the State's objections. The court then set another sentence modification hearing for June 9, 2014, which was rescheduled twice and ultimately held on August 11, 2014.

[26] At the time the Johnsons filed their petitions in December 2013, the sentence modification statute provided, in relevant part:

> (b) If more than three hundred sixty-five (365) days have elapsed since the convicted person began serving the sentence and after a hearing at which the convicted person is present, the court may reduce or suspend the sentence, *subject to the approval of the prosecuting attorney*.

*See* I.C. 35-38-1-17(b) (Supp. 2012) (emphasis added). By applying this version of the statute, the trial court denied the Johnsons' petitions due to lack of prosecutorial approval.

[27] In 2013, when the Indiana General Assembly passed substantial revisions to the Indiana criminal code, Indiana Code section 35-38-1-17 was amended to remove the need for prosecutor approval when a convicted person seeks a sentence modification more than 365 days after he or she began serving his or

her sentence. *See* Pub. L. No. 158-2013, § 396 (2013); Pub. L. No. 168-2014, § 58 (2014). As amended, the statute provided:

> (c) If more than three hundred sixty-five (365) days have elapsed since the convicted person began serving the sentence, the court may reduce or suspend the sentence and impose a sentence that the court was authorized to impose at the time of sentencing. The court must incorporate its reasons in the record.

I.C. § 35-38-1-17(c) (2014) ("the revised statute"). The revised statute became effective July 1, 2014. In 2014, the General Assembly also enacted a savings clause that provides that the new criminal code does not affect penalties incurred, crimes committed, or proceedings begun before July 1, 2014. *See* I.C. § 1-1-5.5-21(a) (Supp. 2014) (the "savings clause").

[28] The trial court applied the prior version of the statute because the Johnsons were convicted and sentenced in 1997, before the new criminal code was in effect. On appeal, the Johnsons argue that the trial court erred when it applied the prior version and that their petitions should have proceeded under the revised statute's provisions.

[29] Before us, then, is the issue of whether the revised statute applies to petitions filed by persons convicted and sentenced before July 1, 2014. This is a question of statutory interpretation. The overarching principle in statutory interpretation is to first decide "whether the legislature has spoken clearly and unambiguously on the point in question." *Sloan v. State*, 947 N.E.2d 917, 922 (Ind. 2011) (quoting *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d

941, 947 (Ind. 2001)). If a statute is clear and unambiguous, we do not apply any rules of construction other than giving effect to the plain and ordinary meaning of the language. *Id.* Thus, we will not delve into legislative intent unnecessarily if no ambiguity exists. *Id.*

[30] In my view, the plain language of subsection (c) of the revised statute means that, after the statute's effective date of July 1, 2014, the prosecutor's consent is no longer required when the trial court is asked to consider reducing or modifying a sentence that the convicted person has been serving for more than 365 days. Notably, no provision in the statute limits its application only to persons convicted or sentenced on or after July 1, 2014. Thus, under the plain meaning of the statute, I would apply the statute prospectively to all petitions for sentence modification filed on or after July 1, 2014, regardless of the petitioner's conviction or sentencing date. After extensive discussion and analysis of relevant case law, this was the reasoning recently adopted by a majority of this panel in *Moore v. State*, __ N.E.3d __, No. 49A05-1408-CR-398 (Ind. Ct. App. Apr. 22, 2015).

[31] As it turns out, the question at issue here is one that has been presented multiple times to this Court in the last six months, producing three published opinions that conflict with *Moore*. In *Hobbs v. State*, Hobbs was convicted and sentenced in 2006 and petitioned for sentence modification on July 23, 2014. 26 N.E.3d 983, 984-85 (Ind. Ct. App. 2015) (opinion issued January 29, 2015 and ordered published March 2, 2015). The trial court denied Hobbs's petition, and on

appeal he argued that the revised statute should apply to his case. *Id.* at 985.

Engaging in the following analysis, a panel of this Court held:

> [The revised statute] became effective on July 1, 2014, as part of our
> General Assembly's overhaul of our criminal code pursuant to P.L.
> 158–2013 and P.L. 168–2014. It was not in effect at the time Hobbs
> committed his offense against L.M.; rather, the law in effect at that
> time stated in relevant part: "If more than three hundred sixty-five
> (365) days have elapsed since the defendant began serving the sentence
> and after a hearing at which the convicted person is present, the court
> may reduce or suspend the sentence, *subject to the approval of the
> prosecuting attorney*." I.C. § 35–38–1–17(b) (2005) (emphasis added); *see
> also Harris v. State*, 897 N.E.2d 927, 928–29 (Ind. 2008) ("The
> sentencing statute in effect at the time a crime is committed governs
> the sentence for that crime.").
>
> Despite Hobbs'[s] assertions to the contrary on appeal, there is no
> question that the current version of Indiana Code Section 35–38–1–17
> does not apply to him. I.C. § 1–1–5.5–21 ("The general assembly does
> not intend the doctrine of amelioration . . . to apply to any SECTION
> of P.L. 158–2013 or P.L. 168–2014"); *see also Marley v. State*, 17 N.E.3d
> 335, 340 (Ind.Ct.App.2014) ("It is abundantly clear . . . that the
> General Assembly intended the new criminal code to have no effect on
> criminal proceedings for offenses committed prior to the enactment of
> the new code."), *trans. denied*. Hobbs'[s] arguments to the contrary are
> without merit.[]

*Id.* at 985-86.

[32] Subsequently, in *Swallows v. State*, __ N.E.3d __, No. 03A05-1412-CR-549 (Ind. Ct. App. April 30, 2015), another panel of this Court affirmed a trial court's decision to apply the prior version of the statute to a petition for sentence modification filed on October 1, 2014. Slip op. at 1-2. The court reasoned that "[o]ur decision is governed by this court's reasoning in *Hobbs*," *id.* at 5, and

quoted the portion of *Hobbs* excerpted above. *Id.* at 6. Then, without further discussion of the savings clause or legislative intent, the court concluded:

> Noting the plain meaning of the savings clause, and following the intent of the Legislature and our court's reasoning in *Hobbs*, we conclude that the current version of Indiana Code section 35-38-1-17, which became effective July 1, 2014, does not apply to Swallows's petition to modify a sentence that he began serving in 1989.

*Id.* at 7. Most recently, in *Carr v. State*, __ N.E.3d. __, No. 45A04-1409-CR-456 (Ind. Ct. App. May 12, 2015), yet another panel of this Court held specifically that the savings clause barred Carr's petition for sentence modification, filed on July 10, 2014, because "Carr's crime was committed in 1999, well before the effective date of the new criminal code[.]" Slip op. at 4 (also citing *Hobbs*, 26 N.E.3d at 985).

[33]   In each of these cases, the Court focuses on the petitioner's conviction or sentencing date and concludes that, because the petitioner was convicted and sentenced before July 1, 2014, the prior version of the statute applies. As best as I can discern from the citations and minimal discussion of those authorities, these decisions have rested on two theories: (1) the law in effect at the time of conviction and sentencing governs a convicted person's sentence, and therefore the sentencing modification law in effect at the time of conviction and sentencing must govern a petition for sentence modification subsequently filed, *see Hobbs*, 26 N.E.3d at 985 (citing *Harris v. State*, 897 N.E.2d at 928–29 ("The sentencing statute in effect at the time a crime is committed governs the sentence for that crime.")); or (2) the savings clause bars application of the

revised statute to a conviction or sentence imposed prior to July 1, 2014. *See Hobbs*, 26 N.E.3d at 985 (citing I.C. § 1–1–5.5–21 ("The general assembly does not intend the doctrine of amelioration . . . to apply to any SECTION of P.L. 158–2013 or P.L. 168–2014")); *Carr*, Slip op. at 3-4.

[34] For the reasons expressed in *Moore* and reaffirmed and expanded upon here, I respectfully disagree with my colleagues on these two theories. As to the first, I believe that when a petition for sentence modification is presented to the court, the petition date – not the conviction or sentencing date – is the critical date for determining the applicability of the statute. Second, the savings clause does not bar application of the revised statute to a petition filed after the effective date of July 1, 2014, because the revised statute, by its terms, can have no ameliorative effect on a conviction or sentence previously imposed. I address each of these arguments in turn.

### *Law in Effect at the Time of Petition*

[35] A trial judge generally has no authority over a convicted person after sentencing. *State v. Harper*, 8 N.E.3d 694, 696 (Ind. 2014). However, the legislature may give the court authority, under certain circumstances, to modify a convicted person's sentence. *Id.* Thus when a convicted person files a petition for sentence modification, he or she invokes the legislature's limited grant of jurisdiction to the trial court for the purposes of sentence modification. Although any question of sentence modification necessarily refers to the sentence previously imposed, the sentence modification petition is a proceeding separate and apart from the adjudication of the case that resulted in conviction

and sentencing. Thus, in the context of sentence modification, the date on which the convicted person invokes the court's jurisdiction is the critical date.

[36] I agree with the statement of law quoted in *Hobbs* that, as a general rule, courts must sentence a convicted person under the statute in effect at the time the person committed the offense. *Harris v. State*, 897 N.E.2d 927, 928-29 (Ind. 2008). *See also Payne v. State*, 688 N.E.2d 164, 165 (Ind. 1997). However, I believe that the general rule has no application here, where a sentence is not being imposed.

[37] This Court has previously examined the effect of changes to the sentence modification statute in *Willis v. State*, 567 N.E.2d 1170 (Ind. Ct. App. 1991), *trans. denied*. At the time Willis originally was sentenced, the modification statute limited the time in which sentence modification could take place "to a period within 180 days of sentencing." *Id.* at 1171. However, before Willis filed his petition, the statute was amended to remove the 180-day limitation. *Id.* Willis petitioned the trial court for modification four years after he was sentenced – firmly outside the 180 day window. *Id.* The trial court applied the statute in effect at the time his sentence was imposed and held that Willis was ineligible to seek modification. *Id.*

[38] On appeal, this Court acknowledged the general rule that the law in effect at the time a crime is committed controls sentencing, but ultimately held that the general rule did not apply to Willis's petition. *Id.* at 1172. The *Willis* court explained that, unlike prior cases in which the convicted persons sought

sentencing under more lenient statutes enacted after the commission of their offenses, in Willis's case

> *no question of sentence is involved*. Rather, Willis merely sought to petition for modification of his sentence under provisions of a later enacted statute which enlarged the time in which he could so petition.

*Id*. (emphasis added). In other words, because the sentence modification statute governs the process by which a convicted person seeks sentence modification, not the imposition of sentences, the general rule is inapplicable.

[39] Similarly, the general rule has no effect in this case. Just as Willis did not ask the court for more lenient sentencing, the revised statute here explicitly provides that on review, "the court may reduce or suspend the sentence and impose a sentence *that the court was authorized to impose at the time of sentencing*." I.C. § 35-38-1-17(c) (Supp. 2014). Thus, under the revised statute, a trial court may only impose a sentence authorized by the law in effect at the time of sentencing or within the court's discretion under the terms of the convicted person's plea agreement. Even where a convicted person seeks sentence modification under the revised statutory terms, the statute ensures that the person is still sentenced "under the statute in effect at the time the person committed the offense." *Payne*, 688 N.E.2d 164, 165 (Ind. 1997). This provision of the revised statute eliminates the primary concern expressed in *Hobbs* that sentence modifications sought under the revised statute run afoul of the general rule that "[t]he sentencing statute in effect at the time a crime is committed governs the sentence for that crime." *Harris*, 897 N.E.2d at 928–29.

[40]     Furthermore, the *Willis* court's conclusion that the change to the statute was "procedural, not substantive" was essential to the court's holding. *Id.* This procedural aspect distinguished Willis's case from an earlier case, *State v. Crocker*, 270 Ind. 377, 385 N.E.2d 1143 (Ind. 1979), in which our supreme court held that a convicted person's petition for modification could not proceed under a newly-enacted modification statute. The *Willis* court explained the distinction:

> In *Crocker*, there was a substantive change because the new statute gave the sentencing court new powers, that is, the power to reduce as well as suspend the remainder of the sentence. No such substantive change is involved here. At the time of sentencing Ind. Code § 35-38-1-17(b) permitted the sentencing court to modify a sentence, either by reduction or suspension, at any time within 180 days of sentencing. The amendment effective June 1, 1985, did not make any changes in the sentencing court's power over the sentence, but merely permitted, under certain circumstances, the sentencing court to consider sentence modification of the same kind more than 180 days after sentencing.

*Id.* The *Willis* court held that because the legislature had merely altered the procedure by which a sentence could be modified and there was no change in the court's sentencing power, Willis could petition for modification under the new statute.

[41]     The procedural nature of the change in *Willis* was thus: under the old modification statute, the court could not act upon Willis's request; but under the new statute, his petition could proceed to the trial court for consideration on its merits. Here, when the General Assembly revised the modification statute to remove the need for prosecutorial approval, it also lifted a procedural barrier

that prevented petitions from reaching trial courts for review on their merits. Before the revision, the court could not act upon a modification request absent the prosecutor's consent; now, the court may hear the convicted person's petition on its merits and decide whether to modify the sentence. Thus, the recent revision to the sentence modification statute implemented a procedural change akin to the change made in *Willis*.

[42] The majority takes issue with the characterization of the change as "procedural," likening it more to the substantive change at issue in *Crocker*. As the court in *Willis* explained, the change in *Crocker* was substantive because it gave the court "the power to *reduce as well as suspend* the remainder of the sentence." *Id.* (emphasis added). At the time *Crocker* was sentenced, the court could only suspend a sentence to probation under the prior statute, but under the new statute, the court had the added power to reduce the sentence. That is, the revision gave the court the power to modify a sentence in a way that the court could not have done before. The options available to the court were now different, and that was a substantive change in the court's power over the sentence.

[43] The revised statute does not change the trial court's authority. Here, the trial court still retains all of the power over the sentence that it had before. In our adversarial system, the power to impose a sentence rests with the court. Though the prosecutor's consent to modification was required under the prior version, the prosecutor never had the ability to reduce or modify the sentence. The prosecutor's consent was only a condition on the trial court's authority.

*See Beanblossom v. State*, 637 N.E.2d 1345, 1348 (Ind. Ct. App. 1994) ("Even though the authority to modify is subject to such a condition, *the statute does not take judicial power away from the trial court and give it to the prosecuting attorney*.") (emphasis added), *trans. denied*. Thus, by lifting the requirement that the prosecutor consent, the legislature merely enacted a procedural change.

[44] Of course, the prosecutor's role in representing the State's interest at a modification hearing is critical. This role is clearly preserved by the revised statute's provision that a court must notify the prosecuting attorney and the prosecutor must give notice to the victim if the court sets a hearing on the petition. I.C. § 35-38-1-17(d) (Supp. 2014). Furthermore, if a hearing is not held, a court may only reduce or suspend a sentence if the prosecuting attorney agrees to the reduction or suspension and the convicted person waives his or her right to be present. I.C. § 35-38-1-17(g) (Supp. 2014).

[45] Because the legislature implemented a procedural change and expressly provided that the court may only "impose a sentence that the court was authorized to impose at the time of sentencing," I.C. § 35-38-1-17(c), I would hold that the revised statute applies to petitions filed after the effective date of the statute, even where the petitioner was convicted and sentenced prior to July 1, 2014.

## Savings Clause

[46] The second line of reasoning advanced by *Hobbs* and its progeny is that, because the revised statute was enacted as part of the new criminal code, the code's

savings clause prevents persons who were convicted or sentenced before July 1, 2014 from petitioning for sentence modification under the revised statute's terms. The savings clause provides:

> (a) A SECTION of P.L.158-2013 or HEA 1006-2014 does not affect:
>
> > (1) penalties incurred;
> >
> > (2) crimes committed; or
> >
> > (3) proceedings begun;
>
> before the effective date of that SECTION of P.L.158-2013 or HEA 1006-2014. Those penalties, crimes, and proceedings continue and shall be imposed and enforced under prior law as if that SECTION of P.L.158-2013 or HEA 1006-2014 had not been enacted.
>
> (b) The general assembly does not intend the doctrine of amelioration (see Vicory v. State, 400 N.E.2d 1380 (Ind. 1980)) to apply to any SECTION of P.L.158-2013 or HEA 1006-2014.

I.C. § 1-1-5.5-21 (Supp. 2014). The revisions to Indiana Code Section 35-38-1-17 occurred pursuant to Public Law 158-2013 and House Enrolled Act 1006-2014.[7] *See* Pub. L. No. 158-2013, § 396 (2013); Pub. L. No. 168-2014, § 58 (2014).

[47] In *Hobbs*, *Carr*, and the majority here, my colleagues would read the savings clause to bar application of all provisions of the new criminal code in *all* proceedings brought by a person whose original conviction or sentencing date was before July 1, 2014. But the legislature did not cast such a wide net, and I

---

[7] H.E.A. 1006-2014 was enacted in 2014. *See* Pub. L. No. 168-2014 (2014).

believe that, because a petition for sentence modification initiates a proceeding separate and apart from conviction and sentencing, the savings clause does not bar application of the revised statute when a sentence modification petition is filed after July 1, 2014.

[48] Subsection (a)(3) provides that the new code may not affect a "proceeding begun" before July 1, 2014. As discussed above, sentence modification petitions are separate proceedings that invoke the legislature's limited grant of jurisdiction to the court for the purpose of reducing or modifying a sentence. These proceedings are initiated when the convicted person files his or her petition. Thus, the language of subsection (a)(3) procedurally bars application of the revised statute to petitions filed before July 1, 2014, but allows petitions filed after July 1, 2014 to be affected by the new code.

[49] Even in proceedings begun after July 1, 2014, however, the savings clause prohibits sections of Public Law 158-2013 or HEA 1006-2014 from affecting "penalties incurred" or "crimes committed" before July 1, 2014, or producing ameliorative effects. *See* I.C. §§ 1-1-5.5-21(a)(1)-(2) & (b) (Supp. 2014).

[50] Public Law 158-2013 was "a voluminous act amending Indiana's criminal sentencing scheme." *Pavlovich v. State*, 6 N.E.3d 969, 975 n.3 (Ind. Ct. App. 2014), *trans. denied.* The act overhauled the criminal code in part by reclassifying felony offenses from four classes to six levels and implementing a new sentencing scheme that frequently provides for reduced advisory sentences and sentencing ranges. *Id.* In my view, the language of subsections (a)(1) and

(a)(2) of the savings clause evinces the legislature's intent that those defendants who committed offenses prior to July 1, 2014 may not take advantage of the new classification and sentencing scheme.

By lifting the requirement that the prosecutor consent to modification, the revised statute does not change the penalty range and does not redefine or reclassify a crime. Thus, the revisions to the sentence modification statute do not "affect" penalties incurred or crimes committed before July 1, 2014. I.C. §§ 1-1-5.5-21(a)(1)-(a)(2) (Supp. 2014). And as already discussed, the revised statute only changed the procedure by which a person may request a sentence modification. In this way, the revised statute certainly "affects" the sentence modification *process*. But it does not "affect" a penalty imposed or crime committed simply because it changes the terms under which a person may seek sentence modification. *See Willis*, 567 N.E.2d at 1172.

Subsection (b) of the savings clause also does not bar application of the revised statute to petitions filed after July 1, 2014. Subsection (b) of the savings clause states: "The general assembly does not intend the doctrine of amelioration (see Vicory v. State, 400 N.E.2d 1380 (Ind. 1980)) to apply to any SECTION of P.L.158-2013 or HEA 1006-2014." I.C. § 1-1-5.5-21 (Supp. 2014). An ameliorative amendment is one in which the maximum penalty for a crime is reduced. *Palmer v. State*, 679 N.E.2d 887, 892 n.4 (Ind. 1997) ("The test to determine whether the legislature has enacted an ameliorative statute, where they have not expressly so stated, is whether the maximum penalty under the new statute is lower than the maximum penalty under the old."). But here, as

discussed above, the revised statute explicitly provides that when modifying a convicted person's sentence, the court may only impose a sentence "that the court was authorized to impose at the time of sentencing." I.C. § 35-38-1-17(c) (Supp. 2014). The revised statute thus has no ameliorative effect because it does not reduce the maximum penalty available and only permits the court to impose a sentence that was permissible at the time of sentencing. And because the revised statute has no ameliorative effect, subsection (b) of the savings clause does not bar the revised statute's application to petitions made by persons convicted or sentenced prior to July 1, 2014.[8]

[53] Finally, I observe that very recently in 2015, the General Assembly revised Indiana Code section 35-38-1-17, adding among other changes, the following language:

> (a) Notwithstanding IC 1-1-5.5-21, this section applies to a person who:
>> (1) commits an offense; or
>> (2) is sentenced;
> before July 1, 2014.

---

[8] Because the revised statute would have no ameliorative effect on Moore's sentence, this Court's recent discussion of the savings clause in *Marley v. State*, 17 N.E.3d 335 (Ind. Ct. App. 2014), *trans. denied*, and cited in *Hobbs*, 26 N.E.3d at 986, is inapplicable here. Marley, under Indiana Appellate Rule 8, asked this Court to review the appropriateness of his sentence in light of the new criminal code. Marley thus sought to take advantage of the ameliorative effects of the new sentencing provisions, which is not an issue here.

P.L. 164-2015 § 17(a) (effective May 5, 2015) ("the 2015 revision"). This language expressly sets aside the operation of subsection (a)(1) and (a)(2) of the savings clause on sentence modifications. And in my view, the reference to July 1, 2014, the effective date of the 2014 revised statute (not the effective date of the newest revision), indicates that the legislative intent was always to apply the revised statute to those persons convicted and sentenced before July 1, 2014. Notably, subsection (a)(3) was not exempted in the 2015 revision. This leaves intact the provision that the revised statute does not apply to proceedings begun before July 1, 2014.

[54] Furthermore, to the degree that the revised statute and the savings clause are ambiguous, the "primary goal of statutory construction is to determine, give effect to, and implement the intent of the Legislature." *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007). Here, the legislature provided that the criminal code "shall be construed in accordance with its general purposes, to," among other enumerated goals, "secure simplicity in procedure," "reduce crime by promoting the use of evidence based best practices for rehabilitation of offenders in a community setting," and "keep dangerous offenders in prison by avoiding the use of scarce prison space for nonviolent offenders." I.C. § 35-32-1-1(1), (5)-(6).

[55] The goal of simplicity in procedure is served when the procedure for sentence modification is the same for all petitioners. It is difficult to fathom that the legislative intent of the savings clause was to bar a procedural change that would ultimately streamline the sentence modification process.

Moreover, by allowing petitions to proceed directly to courts for evaluation on their merits, courts will have greater ability to evaluate the rehabilitative efforts of a convicted person. If courts may determine that rehabilitation is better effectuated in a community setting, courts may then conserve scarce prison resources for dangerous offenders through appropriate sentence modifications. And although the statute no longer requires the prosecutor's consent before the court hears a petition, the revised statute preserves the prosecutor's critical role in representing the State's interest in a sentence modification by requiring advance notice to the prosecutor of any modification hearing. I.C. § 35-38-1-17(d) (Supp. 2014). Thus, no modifications may be made without first giving the prosecutor an opportunity to present evidence and argument at the hearing. And where a hearing is not held, the prosecutor must agree to the modification. I.C. § 35-38-1-17 (g) (Supp. 2014).

### Johnsons' Petitions

In this particular case, the Johnsons' sentence modification proceedings began when they filed their petitions on December 19, 2013. Because the savings clause explicitly bars application of the revised statute to proceedings begun before July 1, 2014, the Johnsons' petitions must proceed under the prior version of the sentence modification statute. Here, the prosecutor did not consent to the modification of the Johnsons' sentences. Accordingly, I would affirm the trial court's denial of the Johnsons' petitions on this ground alone.

The logical outgrowth of my view is that had the Johnsons filed on or after July 1, 2014, the revised statute's terms would apply to their petitions. There is

nothing unique about this approach. As previously mentioned, the Indiana criminal code was substantially revised in 2013. As a result of the savings clause, however, the new penalties apply only to those persons who commit offenses after July 1, 2014. For example, under the previous code, Dealing in a Schedule I, II, or III Controlled Substance was a Class B felony carrying a sentence of between six and twenty years. *See* I.C. §§ 35-48-4-2(a); 35-50-2-5 (2013). However, the same offense on or after July 1, 2014 is now classified as a Level 6 felony, subject to a significantly lower sentencing range of six months to two and one-half years. *See* I.C. §§ 35-48-4-2(a); 35-50-2-7(b) (2014). The savings clause has so far withstood the constitutional challenges brought against it. *See Schaadt v. State*, __ N.E.3d __, No. 33A05-1409-CR-428, slip op. at 5 (Ind. Ct. App. Apr. 8, 2015) (holding that the savings clause did not violate the equal privileges and immunities clause of the Indiana Constitution where the defendant would have faced lesser sentencing ranges had he committed his offense after July 1, 2014). This is because "'the time of a crime is selected as an act of free will by the offender.'" *Id.* (quoting *Rondon v. State*, 711 N.E.2d 506, 513 (Ind. 1999)). Similarly, the petitioner selects the time to file for sentence modification. Thus, I am not troubled that the modification statute also draws a line in the sand based on the petition date.

[59] On first glance, it may also appear that, if all persons convicted and sentenced before July 1, 2014 may now file petitions under the revised statute, our trial courts will be overwhelmed by an influx of petitions. This concern is unfounded, as the legislature in the revised statute limited the number of times a

convicted person may seek modification. Subsection (h) provides: "A convicted person may file a petition for sentence modification under this section: (1) not more than one (1) time in any three hundred sixty-five (365) day period; and (2) a maximum of two (2) times during any consecutive period of incarceration." I.C. § 35-38-1-17(h) (Supp. 2014).[9] Because under this provision a convicted person must now make strategic decisions about the most advantageous time to make his or her two requests, trial courts are unlikely to be overwhelmed by sentence modification petitions.

### *Conclusion*

[60] I would hold that the revised statute applies to all petitions filed on or after July 1, 2014, regardless of the petitioner's conviction or sentencing date. Here, the Johnsons filed their petitions before the effective date of the statute, and thus the trial court did not err in applying the prior version of the statute and denying their petitions for lack of prosecutorial consent. Because I reach this conclusion on a different basis than the majority, I respectfully concur in the result.

---

[9] The 2015 revision places a similar limitation on the number of petitions that a convicted person may file. P.L. 164-2015 § 17(j). The 2015 revision also further restricts the number and timing of petitions filed by violent criminals, as defined by P.L. 164-2015 § 17(d). For example, the 2015 revision limits violent criminals to one petition made without the prosecutor's consent within 365 days of sentencing. P.L. 164-2015 § 17(k).